610 A.2d 7

COMMONWEALTH of Pennsylvania, Appellee,

v.

**Kevin LIVELY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1991.

Decided May 18, 1992.

Peter Goldberger, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., George Leone, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

We granted allocatur to consider limitations on the rule we set forth in *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986), permitting the admission, as substantive evidence, of prior inconsistent statements by a non-party witness.[1] We now hold that such a statement shall be used as substantive evidence only when it was given under oath at a formal legal proceeding; or the statement is reduced to a writing signed and adopted by the declarant; or the statement is recorded verbatim contemporaneously with the making of the statement.

From all the evidence admitted at trial, it could be found that in the early morning hours of April 13, 1986, Tyrone Miller smashed the rear window of appellant's automobile, which was parked at 22nd and Toronto Streets in North Philadelphia. Immediately, appellant retrieved a gun from the trunk of his car, pursued Miller for a distance and fired shots, which did not hit Miller. The next day, appellant again encountered Miller. This time when appellant fired his .38 caliber weapon, Miller was hit in the back. Miller died as a result of the gunshot wound he received.

Appellant was tried in the Court of Common Pleas of Philadelphia County on charges of first degree murder, 18 Pa.C.S. § 2502(a), and possessing an instrument of crime, 18 Pa.C.S. § 907. In the course of these proceedings, the trial court granted appellant's motion for mistrial. Subsequently, appellant filed, inter alia, a motion to dismiss on the

---

1. The admission of prior inconsistent statements for purposes of impeachment is not an issue in this case.

grounds of double jeopardy. Following a hearing, the trial court denied the motion.

Upon re-trial, appellant was found guilty by a jury of the aforementioned crimes. The trial court then sentenced appellant to life imprisonment on the first degree murder conviction and to a concurrent term of two and one half years to five years imprisonment for the conviction of possession of an instrument of crime. Timely post sentence motions were filed, argued and denied. On appeal, the Superior Court affirmed the judgment of sentence.

We must first ascertain whether the prosecutor's conduct in this case prohibited appellant's re-trial on double jeopardy grounds. Appellant argues that the prosecutor intentionally referred to him as a "murderer" while questioning a Commonwealth witness who had allegedly changed her story at trial. Appellant reasons that the prosecutor's conduct was intentional because the prosecutor was frustrated by his witness's change of story and was not prepared to seek admission of the testimony under *Brady*.

Double jeopardy protections afforded by the United States and Pennsylvania constitutions are coextensive and prohibit repeated prosecutions for the same offense. *Commonwealth v. Kunish*, 529 Pa. 206, 602 A.2d 849 (1992); *Commonwealth v. Traitz*, 528 Pa. 305, 597 A.2d 1129 (1991). Retrial of a defendant who has obtained a mistrial as a result of his or her own motion generally is not a violation of the double jeopardy clause, even when the motion was in response to the conduct of the prosecutor. *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). However, in such cases, a defendant may invoke the bar of double jeopardy in a second effort to try him or her if the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Commonwealth v. Simons*, 514 Pa. 10, 522 A.2d 537 (1987).

■ The circumstances that caused the mistrial in this case occurred when the prosecutor was questioning a Commonwealth witness, Diane Rucker, regarding alleged prior inconsistent statements she had made to police. The following exchange occurred:

Q. Did you ever have, just yourself and Officer Fleming, a conversation regarding what you saw on 22nd Street the day that Tyrone Miller got killed?

A. No, I didn't.

Q. Did you ever have a conversation in which you told Officer Fleming first, where it was that Kevin Lively lived, where he stayed at with his girlfriend and what kind of car he was driving, so that Officer Fleming knew where to find the murderer?

N.T. 11/24/87, pp. 137–138. Defense counsel immediately objected to the characterization of appellant as a murderer and moved for a mistrial. An *in camera* proceeding was held after which the trial court concluded that the prosecutor's conduct was not intentional. N.T. 11/24 87 pp. 173–174.

A review of the record reveals that the prosecutor did not deliberately prejudice the jury against appellant. Furthermore, the record belies appellant's claim that the prosecutor tried to force a mistrial because he was unprepared to deal with Ms. Rucker's inconsistent testimony and was unfamiliar with *Commonwealth v. Brady*. The trial court, therefore, properly denied appellant's motion to dismiss on the basis of double jeopardy.

Appellant next argues that the trial court improperly extended our decision in *Brady* and permitted the Commonwealth to introduce inadmissible evidence relating to the substance of the alleged prior inconsistent statements made by certain witnesses. It is appellant's contention that those statements had none of the hallmarks of reliability that were present in *Brady*.

In *Commonwealth v. Brady*, supra, we held that otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for

cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein. *Id.*, 510 Pa. at 131, 507 A.2d at 70. The most damaging evidence against Brady was a tape-recorded statement given by Tina Traxler, Brady's girlfriend, to police, in the presence of her attorney and mother on the evening of the murder. Her statement detailed the events of the murder of a security guard at the Wilson Manufacturing plant after their car had broken down. At trial, however, Tina Traxler, called as a Commonwealth witness, recanted the tape-recorded statement and testified that neither she nor Brady had entered the plant. Over objections, the Commonwealth was permitted to introduce the tape-recorded statement for the truth of the matter asserted and not merely to impeach Ms. Traxler's credibility.

We found that the tape-recorded statement was properly admitted as substantive evidence. We reached this conclusion because the declarant, Tina Traxler, testified at trial and was extensively questioned by both the prosecutor and defense counsel as to the respective validity of each statement and as to the discrepancy between them. The jury had more than adequate opportunity to observe the witness's demeanor, hear her testimony and explanations and assess her credibility. In addition, the statement was rendered under highly reliable circumstances assuring that it was voluntary, knowing and understanding. Thus the important components of the *Brady* rule are that otherwise admissible prior inconsistent statements be given under highly reliable circumstances and the non-party declarant be subject to cross-examination in the proceeding where the prior statement is to be admitted.

In the case *sub judice*, three Commonwealth witnesses, Diane Rucker, John Moody, and Angelo Williamson, were confronted at trial with their prior inconsistent statements after each refused to implicate appellant in the killing of Tyrone Miller. Diane Rucker, in her testimony at trial, denied having told Officer Fleming that she had seen appellant shoot Tyrone Miller. Officer Fleming was then permit-

ted to testify, over appellant's objection, that Ms. Rucker had told him a few hours after the killing that she had seen appellant do the shooting.

In his testimony at trial, John Moody denied having seen defendant during the earlier shooting incident on April 13, 1986, and denied having told Detective Rocks and Assistant District Attorney Rosen that he had seen the gunman. The Commonwealth then, over appellant's objection, was permitted to cross-examine John Moody as to his inconsistent statements contained in a memorandum prepared by Detective Rocks following an interview with Moody. Detective Rocks, who prepared the memorandum at Assistant District Attorney Rosen's direction on November 20, 1986, was permitted to testify as to the circumstances under which the memorandum was prepared.

Commonwealth witness Angelo Williamson admitted at trial to making a statement to police and testifying at the preliminary hearing as to what he had seen when Tyrone Miller was slain. However, he alleged that his statement and testimony were untrue because they had been coerced by the Commonwealth. The Commonwealth was then permitted to cross-examine Angelo Williamson using his prior inconsistent statement and the preliminary hearing transcript.

The Superior Court rejected appellant's contention that the jury should not have been permitted to consider these various alleged unrecorded non-verbatim prior statements of the witnesses as substantive evidence. The Superior Court reasoned that our holding in *Brady* does not require that the prior inconsistent statement be either recorded or verbatim. Such an interpretation of *Brady* is flawed.

Although the statement of the holding in *Brady* was that "otherwise admissible prior inconsistent statements of a declarant who is a witness in a judicial proceeding and is available for cross-examination may be used as substantive evidence to prove the truth of the matters asserted therein," 510 Pa. at 131, 507 A.2d at 70, we noted that Ms. Traxler's tape recorded statement was rendered under high-

ly reliable circumstances assuring that it was voluntary, knowing and understanding. Those highly reliable circumstances included Ms. Traxler's attorney and her mother being present when Ms. Traxler gave her statement to police. In addition, Ms. Traxler's attorney questioned both Ms. Traxler and her mother to assure that the statement was being given knowingly, voluntarily and with understanding of her rights and options. Furthermore, her statement was recorded verbatim contemporaneously with its making. *Commonwealth v. Brady*, 510 Pa. at 131–32, 507 A.2d at 70.

■ In an effort to ensure that only those hearsay declarations that are demonstrably reliable and trustworthy are considered as substantive evidence, we now hold that a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements. See Note, *Substantive Admissibility of a Non–Party Witness' Prior Inconsistent Statements: Pennsylvania Adopts the Modern View*, 32 Vill. L.Rev. 471 (1987).

■ This standard must be applied to ascertain whether in this case the three Commonwealth witnesses' alleged prior inconsistent statements were given under highly reliable circumstances to warrant admission as substantive evidence. Diane Rucker's alleged prior inconsistent statement was introduced by Officer Fleming with whom Ms. Rucker denied having a telephone conversation. Officer Fleming testified that Ms. Rucker had told him that she had seen appellant do the shooting. It was also Officer Fleming's testimony that during this conversation she had provided him with a description of appellant and his car and told him where appellant was living. Ms. Rucker's alleged prior inconsistent statements were not given under oath at a formal proceeding. Neither had such statements been reduced to a signed writing or recorded verbatim contempo-

raneously with the making of the statements. Since appellant was identified as the person who shot Tyrone Miller, Officer Fleming's testimony seriously prejudiced appellant such as to have contributed to his conviction.

Following John Moody's trial testimony that he had not seen the gunman during the earlier shooting incident, the Commonwealth cross-examined Mr. Moody using a memorandum prepared by Detective Rock. The statements in the memorandum which were attributed to Mr. Moody included the fact that subsequent to the shooting appellant told Moody that he had shot at a guy who had broken his car window and the next time he would kill Tyrone Miller. Although Mr. Moody's alleged prior statements were reduced to a writing, it was not signed or adopted by him. Furthermore, the memorandum was not a contemporaneous verbatim recording of Mr. Moody's statements because the memorandum was not prepared until after the interview. It was prejudicial error therefore to admit the memorandum as substantive evidence.

■ Angelo Williamson was confronted by the Commonwealth with prior inconsistent statements he had made at a preliminary hearing and in a signed writing given to police. These statements satisfy the standard in that they were, respectively, given under oath at a formal legal proceeding and reduced to a writing signed and adopted by the declarant. Therefore, the introduction of the prior statements of Angelo Williamson as substantive evidence was proper.

Notwithstanding the fact that Angelo Williamson's prior statements were properly admitted into evidence, the introduction of the prior statements of Diane Rucker and John Moody as substantive evidence was reversible error necessitating a new trial. It is therefore unnecessary for us to consider appellant's remaining claims of error.[2]

2. The additional issues which appellant raised are as follows:
  2. Was the evidence so contradictory as to require an arrest of judgment for insufficiency as a matter of Due Process, or at least a new trial, where the entire case was tried on prior inconsistent statements admitted as substantive evidence?

The order of the Superior Court affirming the judgment of sentence of the Court of Common Pleas of Philadelphia County is reversed and the case is remanded for a new trial.

Jurisdiction relinquished.

4.  Did trial counsel render ineffective assistance by: (a) failing to cross-examine a police witness with respect to what a supposed eyewitness told him? (b) calling a Philadelphia Police Detective as a witness for no rational purpose? and (c) bringing out on cross-examination prejudicial hearsay evidence that a witness had said he had been threatened and was afraid of the defendant? Appellant's Brief pp. 2–3.