**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Steven A. LUKOWICH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 29, 2004.
Filed May 26, 2005.

Joseph P. Burt, Erie, for appellant.

Robert A. Sambroak, Jr., Asst. Dist. Atty., Erie, for the Com., appellee.

Before: MUSMANNO, LALLY GREEN, and McCAFFERY, JJ.

McCAFFERY, J.:

¶ 1 Appellant, Steven A. Lukowich, appeals from a judgment of sentence entered by the Honorable John J. Trucilla after a jury found Appellant guilty of numerous sexual offenses committed against his minor daughter. Specifically, Appellant asks us to determine whether the trial court acted properly in admitting at trial a statement made by the victim to police, and in permitting the Commonwealth to introduce evidence of Appellant's flight from prosecution, which led to the judge giving a jury charge on flight. Having carefully examined the record, we hold that the trial court did act properly in the challenged instances, and we affirm.

¶ 2 The pertinent facts and procedural history, summarized from the trial court opinion and the certified record, are as follows. Over the course of one year beginning in the spring of 1998, Appellant engaged in a variety of sexual relations with his daughter, which culminated in his being convicted of the following: two counts of involuntary deviate sexual intercourse,[1] one count of aggravated indecent assault,[2] two counts of indecent assault,[3] one count of endangering the welfare of children,[4] and one count of corruption of minors.[5]

¶ 3 It was in June 1999 that the minor victim, A.L., Appellant's biological daughter, first revealed to her mother (Appel-

1. 18 Pa.C.S.A. § 3123.

2. 18 Pa.C.S.A. § 3125.

3. 18 Pa.C.S.A. § 3126.

4. 18 Pa.C.S.A. § 4304.

5. 18 Pa.C.S.A. § 6301.

lant's ex-wife) that Appellant had been engaging in sexual activity with her over the course of the previous year. A.L.'s mother reported the allegations to the Erie Police Department, which commenced an investigation. Detective James Washburn was assigned to the case, and Gene Walczak, a caseworker with the Erie County Office of Children and Youth ("OCY") was assigned to handle the investigation for his office. (Notes of Testimony ("N.T."), 8/18/03, at 11; N.T., 8/19/03, at 99). A.L. was interviewed twice by Mr. Walczak in June 1999; she was interviewed and physically examined in July 1999 by a physician at OCY's request; and she was subsequently interviewed on September 22, 1999, just after she turned ten years old, by Detective Washburn. (N.T., 8/18/03, at 11, 52, 103). A.L. told Detective Washburn that her father had kissed and massaged her entire body, including her genitals and buttocks.

¶ 4 Because of A.L.'s tender age, the emotional trauma which she had suffered, and her apparent fear of disclosing to strangers the facts of her abuse, the case was not immediately pursued following the September 1999 interview. However, some two years later, A.L. was re-interviewed by Detective Washburn, after which the detective determined that A.L. seemed capable of testifying before a jury regarding her father's conduct. As a result, Appellant was arrested and charged with the above-specified crimes.

¶ 5 Trial was originally scheduled to begin in November 2002, but was continued at Appellant's request to January 13, 2003. Appellant failed to appear for trial on that date, and a bench warrant was issued.[6] Two months later, Appellant surrendered to federal authorities and was taken into custody in Erie.

¶ 6 Both A.L. and Appellant testified at Appellant's jury trial in August 2003, at the conclusion of which Appellant was found guilty of the above-cited offenses. Appellant was sentenced to an aggregate term of imprisonment of no less than 14.75 years and no more than 39 years, plus five years' consecutive probation. Thereafter, Appellant filed this timely appeal wherein he raises the following two issues for our review:

1. WAS IT ERROR TO ALLOW THE HEARSAY STATEMENTS OF THE COMPLAINING WITNESS IN THE FIRST INTERVIEW BY DETECTIVE WASHBURN IN ADDITION TO HER TRIAL TESTIMONY?

2. WAS IT ERROR TO ALLOW THE COMMONWEALTH TO PRESENT EVIDENCE SUPPOSEDLY OF "FLIGHT" IN SUPPORT OF A THEORY THAT APPELLANT'S ACTIONS SHOWED [CONSCIOUSNESS] OF GUILT?

(Appellant's Brief at 3).

¶ 7 Initially, we observe that the admission of evidence is reserved to the sound discretion of the trial court. *Commonwealth v. Dillon*, 863 A.2d 597, 600 (Pa.Super.2004) (*en banc*). Our standard of review is whether the trial court abused its discretion in admitting the challenged evidence. *Id.*

■ ¶ 8 Appellant argues that the trial court erred in permitting Detective Washburn to read to the jury the statements which A.L. made to him during the Sep-

6. Between the end of 1999 and his arrest in 2002, Appellant had re-married and relocated to South Carolina. As a result of some financial difficulties which Appellant and his new wife began to experience sometime in 2001,

Appellant and his wife engaged in some extremely bizarre behavior, as will be explained more fully below, which resulted, in part, in Appellant's disappearance for a period of time.

tember 1999 interview. Appellant contends that they contain insufficient indicia of reliability to be admissible, and further were tainted by the prior June and July 1999 interviews which had been conducted under the aegis of OCY. Because A.L. did testify at trial in 2003, Appellant characterizes the admission of the 1999 statements as impermissible bolstering of the victim's testimony. (Appellant's Brief at 17–20). We disagree.

¶ 9 The admission of hearsay statements made by a child 12 years old or younger who is an alleged victim of a sexual offense is controlled by the Tender Years Act, 42 Pa.C.S.A. § 5985.1. This statutory section provides in pertinent part:

> (a) **General rule.**—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing . . . indecent contact or . . . sexual offenses . . . performed with or on the child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:
>
>> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
>>
>> (2) the child . . . testifies at the proceeding. . . .

42 Pa.C.S.A. § 5985.1(a)(1), (2)(i).

¶ 10 The tender years exception allows for the admission of a child's out-of-court statement because of the fragile nature of young victims of sexual abuse. *Commonwealth v. Hunzer*, 868 A.2d 498, 510 (Pa.Super.2005) (quoting *Commonwealth v. Fink*, 791 A.2d 1235, 1248 (Pa.Super.2002)). But any statement admitted under this exception must possess sufficient indicia of reliability, as determined from the time, content, and circum-

stances of its making. *Commonwealth v. O'Drain*, 829 A.2d 316, 320 (Pa.Super.2003).

¶ 11 In the case *sub judice,* the trial court conducted an *in camera* hearing immediately preceding the commencement of trial. At issue were two statements A.L. made to Mr. Walczak, the OCY caseworker, two statements A.L. made to Detective Washburn, and one statement A.L. made to the physician who had examined her in July 1999. All five statements were read into evidence at the hearing, and Detective Washburn testified. The trial court refused to allow the admission at trial of either the statements to the OCY caseworker or the 2001 statement to Detective Washburn, but agreed to allow in the statements to the physician and the September 22, 1999 statement to the detective. It is only this September 22, 1999 statement's admissibility which is challenged on appeal.

¶ 12 We have reviewed the testimony of Detective Washburn and the contents of the September 1999 statement, and conclude that the trial court was correct in assessing that the time, content and circumstances of the statement provided sufficient indicia of its reliability. The trial court described its reasoning thusly:

> Now let's go back to Detective Washburn. The issue is . . . that the two interviews with Mr. Walczak had occurred in June of '99. There was an interview, if you will, with Dr. Schober in July of '99 and then an examination, and then at least a reference to Carol from Rape Crisis being involved.
>
> This court has to revisit the interview with Detective Washburn in September of '99. Now, this may have been sufficient time and it appears that Detective Washburn did everything he could to insulate himself from any reports from

the Office of Children and Youth and/or Rape Crisis, and had some background information from the mother of the child as well as Officer Marucci, if the Court understood his testimony correctly.

Again, this Court will find that he was not so tainted and did not unnecessarily lead or prompt the child at that time which was in September, and there again, permit him to testify to the September, '99 interview. . . .

(N.T., 8/18/03, at 106–107).

¶ 13 We conclude that the trial court was correct in its assessment that Detective Washburn deliberately and sufficiently limited his exposure to sources of information who had contact with the victim prior to his interviewing her in September 1999. He testified that he neither reviewed A.L.'s statements to Mr. Walczak nor spoke to him concerning A.L. (*Id.* at 96–97). Nor did Detective Washburn have access to the contents of the interview conducted by "Carol" of the Rape Crisis Center. (*Id.*) Although the statement at issue is in narrative format and does not repeat *verbatim* the questions posed and the answers given, Detective Washburn did testify that he avoided leading questions. (*Id.* at 53, 80–81). The trial court credited this testimony, and we are required to accept its factual findings. *See Commonwealth v. Pierce*, 537 Pa. 514, 530, 645 A.2d 189, 198 (1994). Further, the court was aware that A.L. did have contact with Mr. Walczak and Dr. Schober prior to her first interview with Detective Washburn, and noted that A.L., who was 14 years old at the time of trial, would be subject to full cross-examination thereon.

¶ 14 Although Appellant does not challenge A.L.'s competency to testify at trial, he does base part of his arguments for excluding the September 1999 statement on allegations that A.L. had been tainted by her prior exposure to investigators and counselors. We resolve this matter by analogy to allegations of taint where they do relate to issues of competency.

¶ 15 In such instances, an allegation of taint must be supported by clear and convincing evidence. *Commonwealth v. Delbridge*, 578 Pa. 641, 664, 855 A.2d 27, 40 (2003), *opinion after remand, Commonwealth v. Delbridge*, —— Pa. ——, 859 A.2d 1254 (2004). By extension, in the instant matter, Appellant has not shown by clear and convincing evidence that A.L.'s statement to Detective Washburn in September 1999, was the product of her being tainted through prior interaction with investigators and counselors. *Compare Commonwealth v. Alston*, 864 A.2d 539, 550–551 (Pa.Super.2004) (*en banc*) (applying *Delbridge* analysis to conclude that trial court prematurely ordered psychiatric examination of minor victim of sexual abuse).

¶ 16 We conclude that the trial court properly allowed the admission of statements made by A.L. to Detective Washburn on September 22, 1999, for use at trial. Appellant's claim to the contrary is unavailing.

¶ 17 Appellant's second issue for our review is whether the trial court erred in allowing the introduction of evidence at trial concerning Appellant's flight to show consciousness of guilt. As an ancillary issue, he also challenges the court's jury charge on flight.

¶ 18 As noted above, the admission of evidence is reserved to the sound discretion of the trial court, whose ruling is not subject to reversal on appeal unless there has been an abuse of discretion in admitting the challenged evidence. *Dillon, supra* at 600. In addition, where evidence exists that a defendant committed a crime, knew he was wanted, and fled or concealed himself, such evidence is admissible to establish consciousness of guilt.

*Commonwealth v. Johnson,* 576 Pa. 23, 838 A.2d 663, 681 (2003). When reviewing the propriety of a jury charge, an appellate court examines the charge as a whole. *Commonwealth v. Garcia,* 847 A.2d 67, 73 (Pa.Super.2004). The trial court has broad discretion in formulating jury instructions, as long as the law is presented to the jury in a clear, adequate, and accurate manner. *Id.*

¶ 19 At trial, the Commonwealth was permitted to introduce evidence that in late 2002 and early 2003, Appellant either inflicted physical injury upon himself and/or claimed that unnamed others had injured him. (N.T., 8/20/03, at 50, 53; N.T., 8/19/03, at 161–66). In his own defense, Appellant testified that he and his wife had devised a plan to cause him to disappear under suspicious circumstances. (N.T., 8/20/03, at 54). Their alleged intent was to create the impression that Appellant had been murdered so that his wife would be able to collect life insurance benefits, and they would eventually rejoin each other in a distant location. (*Id.* at 51–52).[7]

¶ 20 Appellant does not argue that there is no evidence that he committed a crime or that he did not know that he was wanted by the police. Rather, he maintains that in light of his explanations for his actions, it was not reasonable to infer that

his flight was evidence of consciousness of guilt, thus justifying the jury instruction on flight which he has appealed. Rather, he contends that it was his desire to rid himself of crushing financial burdens that motivated his actions. However, the evidence presented at trial did fairly raise the inference that Appellant's actions could be construed as consciousness of guilt.

¶ 21 Appellant knew in June 1999, that his daughter had made allegations of sexual abuse against him. (*Id.* at 31–32). Appellant knew in January 2002, that a criminal complaint had been filed against him in connection with those allegations. By November 2002, at the time he says he shot himself, Appellant knew that charges against him were pending in Erie. (*Id.* at 52). Appellant testified that at that time, his "whole future was just locked up. I was just tired of everything." (*Id.* at 54). Appellant testified that the wording of the letter that accompanied the charred pacemaker was chosen to implicate his ex-wife, A.L.'s mother, and that the references were to "the problems up here." (*Id.* at 68). He admitted on cross-examination that the letter was meant to link his disappearance to this case, and that if his scheme had worked, these charges would have gone away. (*Id.* at 71–72). The timing of Appellant's disappearance in early January 2003, coincided with the scheduled

---

**7.** Appellant's bizarre tale included the following. On January 3, 2003, Appellant cut his wrists and smeared blood in his truck. (*Id.* at 54). The police were summoned and they began a missing person investigation. (N.T., 8/19/03, at 166–168). On January 9, 2003, Appellant's wife called the police and advised that she had received a pacemaker, which she knew to be Appellant's, and a letter addressed to "Wife of the beast" in their mailbox. (*Id.* at 171–72). Although the envelope was not postmarked, the investigating officer believed that Appellant may have been murdered, particularly after he determined that the pacemaker's serial number matched that of Appel-

lant's. (*Id.* at 172–175). However, in April, he learned that Appellant had turned himself in to authorities in Erie. (*Id.* at 179). Appellant testified that he had actually taken a bus to Texas and stayed there for three to four weeks. (N.T., 8/20/03, at 57). He then returned to South Carolina and sought to convince his wife to leave with him. (*Id.*). She refused, and Appellant again left and took a bus to Mexico, where he stayed for approximately two months. (*Id.* at 57–58). On or about April 17, 2003, Appellant talked to an FBI agent and arranged to surrender in Erie. (*Id.* at 59).

commencement of trial in Erie on the instant charges.

¶ 22 On the basis of the foregoing, it was proper for the trial court to admit the letter and evidence of Appellant's self-inflicted injuries and his subsequent departures from South Carolina for Texas and Mexico. These circumstances, coupled with the other inculpatory evidence presented at trial, including A.L.'s testimony, could certainly provide a basis for the jury to conclude that Appellant's actions were evidence of consciousness of guilt.

¶ 23 Appellant's reliance upon *Commonwealth v. Wyche*, 320 Pa.Super. 483, 467 A.2d 636 (1983) is misplaced because in that case there was no showing that a missing witness, whose behavior would have been the subject of a flight instruction and who had not been charged with a crime, was aware that he was being sought for its commission. Absent knowledge that he was being sought as a defense witness, no flight charge was warranted. *Id.* at 638.

¶ 24 Having determined that the challenged evidence was properly admitted, we conclude that the trial court properly instructed the jury regarding its consideration of the evidence of flight and/or concealment. When read as a whole, the flight instruction correctly advised the jury that it could consider the evidence of consciousness of guilt, but that it was not required to do so. The charge was clear, adequate, and legally accurate. *See Garcia, supra* at 73. No relief is warranted based upon the trial court's admission of the evidence or on the basis of the jury charge. Accordingly, we affirm Appellant's judgment of sentence.

¶ 25 Judgment of sentence affirmed.