J. S20022/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DONOVAN A. LEAMY, | : | No. 2637 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, July 23, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0008236-2013

BEFORE: BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 16, 2017**

Donovan A. Leamy appeals from the judgment of sentence of July 23, 2015, following his conviction of attempted murder, recklessly endangering another person ("REAP"), and a violation of the Uniform Firearms Act ("VUFA").[1]  We affirm.

The trial court has summarized the facts of this case as follows:

> At trial, Tyree Gibbons testified that on the afternoon of April 18, 2013, he got into a fist fight with Appellant outside a corner store at the corner of Vernon Road and Phil-Elena Street in the Mt. Airy section of Philadelphia after Appellant complained that Gibbons had been driving too fast.  Gibbons recognized Appellant, who has a large tattoo on his [sic] the middle of his forehead and by the sides of his eyes, as a member of a group called "Splash Life," and told police that he often saw Appellant and other members of the group on the

---

[1] 18 Pa.C.S.A. §§ 901(a), 2705, & 6106(a)(1), respectively.

corner by his house. A videotape of the fight showed a very angry Appellant approach Gibbons and showed fists swinging with Gibbons getting the better of Appellant. Gibbons also told police that he heard Appellant tell another male named Drevon[2] to go get the gun. However, Drevon declined, saying that Gibbons was "cool." Although Appellant claimed to have gotten over the fight once it ended, the evidence showed that Appellant was still tweeting about the fight on Twitter at 9:42 p.m. and 9:44 p.m. that night. One of the tweets contained numerous icons of fists and guns.

Approximately thirty minutes before the shooting, a white Impala pulled up next to Gibbons' cousin Deonte Barr. Appellant's friend Drevon hopped out of the vehicle and asked Deonte who was at his house. Deonte responded that only his mother was at home. Deonte could see the handle of a gun in Drevon's waistband. Aware that a fight had occurred earlier that day, Deonte rushed home to warn his family.

At approximately 9:00 p.m. that night, Gibbons picked up another cousin, Justin Tift, who had just come to Philadelphia from Charlotte, North Carolina to visit his grandmother who was in the hospital. The two men stopped at a liquor store and then at Checkers before going to their cousin Deonte's house at 7900 Fayette Street. At Checkers, Mr. Tift observed Gibbons speaking to someone in a white Impala. After they arrived at 7900 Fayette Street at approximately 10:00 p.m., Mr. Tift went outside with Gibbons upon hearing that someone had tried to grab Deonte. Once outside, Mr. Tift observed a white Impala that appeared empty suddenly pull off. About a minute later, Mr. Tift heard Gibbons yell "run." Gibbons made it safely back into the house while Mr. Tift was shot ten times as he ran, falling in front of the steps to the residence. Mr. Tift underwent several surgeries for his multiple gunshot wounds and was still

---

[2] Drevon Williams, appellant's co-defendant at trial.

undergoing rehabilitation at the time of trial. The shooting left his right leg paralyzed. He testified that he is in constant pain in the right foot and knee. Although Mr. Tift did not see who shot him, Gibbons told police that two males walked out of the driveway and started shooting. He described one of the shooters as tall, thin build, dark skin and tattoos on his face. Both shooters wore masks. Gibbons identified the male with the facial tattoos as Appellant, the same male with whom he had engaged in a fist fight earlier that day.

Appellant denied participation in the shooting and presented several alibi witnesses in his defense. One of [the] witnesses, Joan Seech, stated she has known Appellant for many years from the neighborhood and that he was always at her home visiting with her children. Ms. Seech testified that she was in her bedroom when she heard the gunshots. She further testified that she immediately went to her children's bedroom, she did not see Appellant there and that her children told her Appellant had gone to see what had happened. Ms. Seech later changed her testimony to say that Appellant was still in her home at the time.

Sabrina Gray, Ms. Seech's daughter, claimed that Appellant was at her home all day, that he never left, and that he was with her in her room when the gunshots occurred. However, Ms. Gray was unable to explain how Appellant could have been at her home all day when a video showed him in a fight outside a store in the afternoon.

Gerald Scott, who was present at the fist fight earlier in the day, testified that he was in Sabrina Gray's room with Appellant when they heard gunshots, that he left with Appellant to see what had happened, and was arrested. Scott refused to sign his statement to police.

Trial court opinion, 5/23/16 at 2-4 (citations to the transcript omitted; punctuation corrected).

On April 18, 2013, [appellant] was arrested and charged with [the above-mentioned offenses]. On April 7, 2015, Appellant waived a jury and proceeded to a trial before the Court. The trial was held over three days [on] April 7, 2015, April 13, 2015, and April 16, 2015. On April 16, 2015 the Court found Appellant guilty of Attempted Murder, REAP and VUFA § 6106.[3] On July 23, 2015, the Court sentenced Appellant to an aggregate term of 12 to 27 years['] imprisonment. Appellant filed a Notice of Appeal on August 23, 2015.[4] On August 26, 2015, this Court ordered Appellant pursuant to Pa.R.A.P. 1925(b) to file with the Court a Concise Statement of Matters Complained of on Appeal. A timely Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal was filed by Appellant on November 12, 2015.[5]

*Id.* at 1-2.

Appellant has raised the following issue for this court's review: "Was the evidence insufficient to support [appellant]'s convictions because the verdict of guilty on all counts was based on a guess and pure speculation?" (Appellant's brief at 4.)

Appellant argues that the evidence was insufficient to prove his identity as one of the shooters because even though he was arrested shortly after the incident, no firearm was recovered and no gunshot residue was

---

[3] Drevon Williams was acquitted.

[4] Appellant did not file post-sentence motions.

[5] Appellant received three extensions of time in which to file his Rule 1925(b) statement.

found on appellant's person. (***Id.*** at 11.)[6] Appellant further argues that Gibbons' identification, based at least partially on appellant's facial tattoos, was inherently unreliable because the perpetrators wore masks. (***Id.*** at 11-12.) According to appellant, the trial court would have to infer that Gibbons had "x-ray vision" in order to rely on his identification. (***Id.*** at 12.) Appellant contends that motive alone, ***i.e.***, the fist fight that occurred earlier that day, is insufficient to sustain a conviction. (***Id.*** at 11.)

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[6] Investigators did recover fourteen fired cartridge casings ("FCCs") from the scene, eight .9mm Luger FCCs and six .380 caliber FCCs. (Notes of testimony, 4/7/15 at 57.)

*Commonwealth v. Johnson*, 833 A.2d 260, 262-263 (Pa.Super. 2003), quoting *Commonwealth v. Lambert*, 795 A.2d 1010, 1014-1015 (Pa.Super. 2002) (internal citations and quotation marks omitted).

Gibbons gave a statement to police in which he identified appellant as one of the gunmen. (Notes of testimony, 4/13/15 at 20.)[7] Gibbons recognized him from the fight earlier that day at the corner store. (*Id.* at 18.) Gibbons stated that appellant and his group called "Splash Life" were always hanging around on the corner. (*Id.* at 19-20.) Gibbons described appellant as a tall, dark-skinned man with a big tattoo in the middle of his forehead and around the sides of his eyes. (*Id.* at 19-21.) At the time of the shooting, appellant was wearing the same clothing that he had on during the fight. (*Id.* at 21.) Gibbons told police that although they were wearing masks, he could see appellant's facial tattoo. (*Id.* at 20.)

---

[7] Gibbons was a recalcitrant witness and refused to identify appellant at trial. In fact, Gibbons claimed he could not remember the shooting or giving a statement to police. (*Id.* at 9-10.) Therefore, Gibbons' statement to police incriminating appellant was admissible at trial as substantive evidence. *Commonwealth v. Lively*, 610 A.2d 7, 9-10 (Pa. 1992); P.R.E. 803.1 (A writing signed and adopted by the declarant is deemed to have been given under reliable circumstances and is not excluded by the hearsay rule if it is inconsistent with the declarant's testimony at trial and the declarant is subject to cross-examination). Here, Gibbons' statement was reduced to writing and signed and adopted by the witness. (Notes of testimony, 4/13/15 at 49-51; Commonwealth's Exhibit 7.) Gibbons also picked appellant's photo out of a photo array. (*Id.* at 41, 51, 56; Commonwealth's Exhibit 10.) *See also Commonwealth v. Ly*, 599 A.2d 613, 617 (Pa. 1991) ("where witnesses are in court and subject to cross-examination, a police officer may testify concerning pre-trial identification by the witness" (citation omitted)).

Gibbons' statement, which the trial court found to be reliable, combined with other circumstantial evidence including motive, was clearly sufficient to sustain the verdict. Gibbons was familiar with appellant and his distinctive facial tattoo. As the trial court observed, "because the tattoo in the middle of Appellant's forehead was quite large and continued down the side of his eyes, the tattoo would have been visible around the eye cutouts despite the mask." (Trial court opinion, 5/23/16 at 5.) Gibbons accurately described appellant's height, build, and skin tone. (*Id.*) Moreover, "[A]ny uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency." *Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa.Super. 2006), *appeal denied*, 916 A.2d 1101 (Pa. 2007), citing *Commonwealth v. Minnis*, 458 A.2d 231, 233 (Pa.Super. 1983).

As described above, there was additional evidence linking appellant to the crime, including that he had lost a fight to Gibbons earlier in the day and had asked Drevon for a gun. Appellant sent out angry tweets about the fist fight just minutes prior to the shooting. The trial court also found appellant's alibi witnesses to be not credible. The trial court believed Gibbons' prior statement to police which was its prerogative. (Trial court opinion, 5/23/16 at 6.) Appellant's sufficiency claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: _5/16/2017_