J-S22033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA :   IN THE SUPERIOR COURT OF
                                     :           PENNSYLVANIA
                                     :
           v.                        :
                                     :
                                   :
PATRICK HICKSON                  :
                                   :
          Appellant           :     No. 2539 EDA 2021

Appeal from the Judgment of Sentence Entered November 8, 2021
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0002711-2018

BEFORE: BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:         **FILED DECEMBER 28, 2022**

Patrick Hickson ("Hickson") appeals from the judgment of sentence imposed following his convictions for attempted first-degree murder, two counts of aggravated assault, persons not to possess firearms, carrying firearms without a license, possessing an instrument of crime, terroristic threats, and recklessly endangering another person.[1] We affirm.

On an afternoon in May 2018, Hickson and two men were in the parking lot of a Coatesville restaurant when Dayvon Brown ("Brown"), arrived to pick up food. **See** N.T., 8/10/21, at 8-13, 21. Brown talked to the two men who had come with Hickson and then to Hickson, whom he had known for years as "Peanut." **See id**. at 173-86; Commonwealth Exhibits C-70, C-71. Their

---

[1] **See** 18 Pa.C.S.A. §§ 901(a), 2502(a), 2702(a)(1), 2702(a)(4), 6105(a)(1), 6106(a)(1), 907, 2706(a)(1), 2705.

discussion became heated and "Peanut" repeatedly threatened to kill Brown. Brown saw "Peanut" reach for a gun that was sticking up from his waistband, and Brown punched him in the face. Brown turned away and then heard four gunshots, all of which were subsequently determined to have been fired from the same gun. *See* N.T., 8/10/21, at 173-86; N.T., 8/11/21, 200-01; Commonwealth Exhibits C-70, C-71.

After hearing the first shot, Brown dropped to the ground, crawled to his SUV, and got in. He fled the scene before the police arrived. *See* N.T., 8/10/21, at 38, 115, 128, 132-33, 138, 163-164, 170; N.T., 8/11/21, at 6, 38, 109-13. The police found Brown's SUV ten minutes later. It had a bullet strike mark on its exterior, and a portion of a bullet lodged under an inside grille. *See* N.T., 8/11/21, at 84-89, 117-18.

Three men fled the scene including the gunman, who was wearing a white sleeveless T-shirt according to an eyewitness. *See* N.T., 8/10/21, at 40-43, 58-64, 73, 76-77; N.T., 8/11/21, at 6, 12, 40-43, 49. Police arrested Brown days later for an unrelated offense. He gave two statements concerning the shooting. *See id*. at 173-86; Commonwealth's Exhibits, C-70, C-71.[2]

---

[2] At trial, Brown recanted his statements including his identification of "Peanut." His inconsistent prior videorecorded statements were admitted as substantive evidence pursuant to *Commonwealth v. Lively*, 610 A.2d 7, 10 (Pa. 1992) (holding that prior inconsistent statements recorded are admissible as substantive evidence). *See* N.T., 8/10/21, at 177.

A little more than one month later, Officer Jose Colon of the Coatesville Police Department was on patrol in a marked police car and saw Hickson, whom he knew as "Peanut." *See* N.T., 8/12/21, at 36, 39-40, 44-47. When Officer Colon pulled up to him, Hickson fled. Another officer arrested him and found him to be in possession of drugs. *See id*. at 14-19, 21, 25, 28. The parties stipulated at trial that on the day of the shooting, Hickson did not have a valid license to possess a firearm. *See id*. at 69.

A jury convicted Hickson of the above-listed offenses. The trial court imposed an aggregate term of ten to twenty years of imprisonment. Hickson filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

On appeal, Hickson raises the following issues for our review:

1. Did the trial court commit error by commenting on [Hickson's] use of photographs . . . because said comments tainted and swayed the jury's fact-finding function?

2. Did the trial court err[] by allowing the introduction of consciousness of guilt evidence and the related jury instruction?

3. Was the evidence produced at trial insufficient to sustain [Hickson's] convictions for attempted murder and aggravated assault?

Hickson's Brief at 6.

In his first issue, Hickson asserts the trial court improperly commented on his use of Commonwealth's Exhibit C-36D, a photograph of the view from the crime scene to a neighboring house, which the Commonwealth previously

introduced at trial to illustrate the conditions around the restaurant and the surrounding area. **See** N.T., 8/10/21, at 16-18.[3] Specifically, on direct examination, Tina Keen ("Keen") testified that she heard the shooting from her home, and saw three men running from the area of the restaurant, including one with a gun. **See** N.T. 8/11/21, at 4-13. On cross-examination, Hickson attempted, in relevant part, to impeach Keen's testimony about what she had seen by inquiring, using Exhibit C-36D, whether she had been able to see the scene clearly. **See id**. at 18-22. When presented with Exhibit C-36D, Keen initially stated that it was a fair and accurate depiction of the view from the restaurant to her house, **see id**. at 23-24, and the following exchange occurred:

Q. Now, Ms. Keen , again, this is C-36D. This is your house here?

A. Correct.

Q. These are two trees in front of your house?

A. That one is not a tree in front of our house. This portion – this bright green actually belongs to a tree that's over here, **so it's sort of inaccurate**.

Q. So, it's a branch hanging down?

A. **Whenever this picture was taken, it was**.

Q. And there's this tree though in front of your house, correct?

A. Correct.

---

[3] Hickson objected to the admission of the photographs because the prosecution did not introduce evidence about when they were taken. **See** N.T., 8/10/21, 17-18.

Q. And in relation – and if you could use your laser pointer, I'd appreciate it. Your front door is where?

A. From this vantage point you took this picture, it's about here.

Q. Okay.

The Court: These are 2021 photographs, are they not, this one? Commonwealth team, isn't this a 2021 photograph?

[Prosecutor]: It is, your Honor, yes.

The Court: From July of this year?

[Prosecutor]: Yes.

A. **These – this is a – perspective on this picture, I feel is a little off.** These trees are tall enough that I can easily walk under those trees. So, they're not low to the ground at all.

Q. Well, again, we're looking at it from this angle.

The Court: **And [defense counsel], I very seldom – this photograph is 30[-]some months different from the date of this incident, so I'm not sure of the value. The Commonwealth hasn't objected, but my point is trees grow, branches grow**. If you have a photograph from 2018, why don't you use it?

Q. Your Honor, I did ask the witness if this was a fair and accurate representation of her house.

The Court: You didn't ask her about the size of the trees compared to three years ago. Let's move [] on.

N.T. 8/11/21, at 24-26 (emphases added).

Hickson's issue assigns error to the trial court's statement that "trees grow, branches grow," which, he says, implied that the photograph was not an accurate depiction of the witness's vantagepoint, strengthened Keen's

- 5 -

credibility, swayed the jury's fact-finding function, and fundamentally impacted the outcome of the trial in favor of the Commonwealth.[4]

As an initial matter, we note that Hickson made no objection to the trial court's remarks, and therefore deprived the court of the opportunity to correct any possible error. His challenge to the trial court's remark, first raised on appeal is, thus, waived. **See** Pa.R.A.P. 302(a) (providing that issues not raised in trial court are waived and cannot be raised for the first time on appeal).

Even if reviewable, the trial court's remarks would not merit relief. A trial court has a right and sometimes a duty to question a witness to clarify existing facts, though not in a biased or protracted manner. **See Commonwealth v. King**, 549 A.2d 195, 197 (Pa. Super. 1998). A court must exercise that right with caution, and with due regard for the common

_____

[4] Hickson does not challenge the trial court's ruling that the photograph was inadmissible to cross-examine Keen because she could not authenticate it. Authentication of an exhibit, such as a photograph, may be provided where the proponent presents evidence sufficient to support a finding that the item is what the proponent claims it is. **See** Pa.R.E. 901(a), (b)(1); **see also Commonwealth v. Jackson**, 283 A.3d 814, 818 (Pa. Super. 2022). A court does not abuse its discretion where it declines to admit into evidence a photograph that a witness testifies is not an accurate depiction of what it purports to be. **See Commonwealth v. Rosarius**, 771 A.2d 29, 32 (Pa. Super. 2001). Keen testified that the photograph was not an accurate depiction of her view of the crime scene on the date of the crime. That testimony constituted a proper basis for the trial court to preclude its use to cross-examine her. **Id**.

law preference for clarification by adversarial cross-examination. *See id*. Trial courts should not ask questions that usurp or unduly encroach upon the fact-finding function of the jury by suggesting judicial disbelief of particular testimony or an opinion on one or more issues for one side against another. *Id*. (internal citations omitted). Within these constraints, the law permits a trial court to participate in trial proceedings to ensure that justice is done, in recognition of the fact that "a courtroom is a court of justice and not just a battleground for the tilting of attorneys or a testing of their wits and oratory, to so limit it would often jeopardize or defeat justice." *Id*. (internal quotations and citations omitted). Not every unwise remark made by a court in the course of trial compels a mistrial. Even where a defendant has timely requested a mistrial (here, Hickson did not) that relief is only available where the remark is prejudicial, *i.e.*, it is of such a nature, or delivered in such a manner that it may reasonably be held to have deprived the accused of a fair and impartial trial. *See Commonwealth v. Jones*, 683 A.2d 1181, 1191 (Pa. 1996).

In its opinion, the trial court states that its remarks did not taint or sway the jury, but ensured that the jury was considering only relevant and proper evidence. *See* Trial Court Opinion, 1/31/22, at 4-7. We do not agree with Hickson's assertion that the trial court's comment strengthened Keen's credibility, swayed the jury's fact-finding function, and fundamentally impacted the outcome of the trial in favor of the Commonwealth. It was

Keen's assertion that the photograph was "sort of inaccurate" that led the trial court to inquire about when the photograph had been taken. Immediately after the trial court ascertained that the photograph had been taken thirty or so months after the incident, Keen stated that the photograph's perspective was "a little off." *See* N.T., 8/11/22, at 25. She continued, "These trees are tall enough that I can easily walk under those trees. So, they're not low to the ground at all." *See id*.

Keen's testimony supported the trial court's observation that trees and branches grow. Additionally, the court made its commonsense remark after Hickson persisted in cross-examining the witness with the photograph, despite her repeated statements indicating that she could not authenticate it because it was "inaccurate" or "a little off." The trial court's statement did not express judicial disbelief of particular testimony, but simply stated why Keen could not declare that the photograph accurately depicted her vantage at the time of incident. The trial court's comment served the interests of clarification and placed clarity above the "tilting of attorneys". *See King*, 549 A.2d at 197 (citation omitted). Thus, we conclude that the trial court's comment did not prejudice Hickson, particularly in light of other evidence demonstrating that Hickson shot at the victim.[5] Accordingly, we find no merit to Hickson's claim

_____

[5] *Commonwealth v. Hammer*, 494 A.2d 1054 (Pa. 1985), which Hickson cites, is distinguishable. There, the trial court repeatedly interrupted defense counsel's examination of his client: once for the court to advocate in favor of
*(Footnote Continued Next Page)*

that the trial court improperly bolstered Keen's testimony or biased the jury in the Commonwealth's favor.

Hickson's second issue asserts that the trial court abused its discretion by admitting evidence of his flight from an arresting officer to show consciousness of guilt, and also challenges the trial court's flight instruction. Hickson asserts that he fled not because of his involvement in the incident but because he had drugs in his possession, did not know he was wanted for the crime, and his Fifth Amendment rights would have been implicated had he testified that he fled from the officer because he was in possession of drugs.

We first examine whether Hickson preserved his appellate challenge to the trial court's evidentiary ruling. The record shows that one day before the prosecution introduced evidence of his flight from Officer Colon, Hickson asserted that the evidence would be cumulative and "prejudicial," and that

_____

a police statement Hammer was disputing; a second time for the court to suggest an inconsistency in Hammer's testimony; and a third time for the court to question Hammer in a manner to reinforce a point the Commonwealth had already made, questioning his state of mind, and undermining a defense expert. *See id*. at 1061-64. Here, the trial court did not offer an opinion about critical issues in the case. Nor do we agree with Hickson's assertion that the trial court "*concluded for the jury*" that the photograph was not an accurate depiction. Reply Brief at 2 (emphasis in original). It was the witness's own testimony, not the trial court's statement, that established that the photograph was not an accurate depiction of conditions at the time of the crime.

mere presence and flight after a crime did not demonstrate consciousness of guilt. *See* N.T., 8/11/21, at 125.[6]

Hickson did not assert, at the time of his objection, before or after Officer Colon's testimony, or in his Rule 1925(b) statement, the claim he now asserts on appeal, *i.e.*, that the flight evidence was inadmissible because to refute it he would have had to acknowledge his exposure to criminal liability in another case. Hickson may not have review of this argument against the admissibility of the flight evidence first raised on appeal. *See Commonwealth v. McFalls*, 251 A.3d 1286, 1293 (Pa. Super. 2021) (stating that an appellant may not raise a different theory of relief for the first time on appeal), *appeal denied*, 278 A.3d 301 (Pa. 2022); *Commonwealth v. Rivera*, 238 A.3d 482, 499 (Pa. Super. 2020) (holding that this Court cannot review a legal theory offered in support of a claim where that theory was not presented to the trial court), *appeal denied*, 250 A.3d 1158 (Pa. 2021).

Even if reviewable, Hickson's challenges to the evidence of his flight would not merit relief. The admissibility of evidence is in the trial court's discretion and will not be reversed absent an abuse of that discretion. *See Commonwealth v. DeJesus*, 880 A.2d 608, 614 (Pa. 2005). An abuse of

---

[6] Hickson's assertion that ("[w]e've already got it on camera, people fleeing or running"), *see* N.T., 8/11/21, at 125, was apparently an objection to the admission of video evidence of his flight from the crime scene, rather than the evidence the prosecution sought to introduce of his flight from Officer Colon one month later.

discretion exists where the trial court overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. *See Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019). Evidence is admissible to establish a defendant's consciousness of guilt where he committed a crime, knew he was wanted and fled or concealed himself. *See Commonwealth v. Lukowich*, 875 A.2d 1169, 1173 (Pa. Super. 2005). A jury may infer from the circumstances surrounding his flight that a defendant was aware of his fugitive status. *See Commonwealth v. Hudson*, 955 A.2d 1031, 1036 (Pa. Super. 2008).

In this case, Officer Colon was in uniform in a marked police car when Hickson, whom he knew as "Peanut," fled upon seeing him before hearing the reason the officer wanted him to stop. *See* N.T., 8/12/21, at 17-19, 28-29. Further, Hickson himself elicited, over a prosecution objection, Officer Colon's testimony that he was "pretty sure" that a member of the police department had previously attempted to serve an arrest warrant on Hickson at Hickson's house. *See id*. at 30. Additionally, Hickson, not the prosecutor, elicited testimony that he was found with drugs when he was arrested. *See id*. at 28. Thus, there was evidence that Hickson committed the crimes charged in this case, knew that he was wanted, and fled to avoid apprehension. Accordingly, the trial court did not abuse its discretion by admitting evidence

of Hickson's flight. **See Hudson**, 955 A.2d at 1036; **Lukowich**, 875 A.2d at 1173.[7]

Hickson next asserts that the trial court abused its discretion by giving a flight instruction because there was allegedly no evidence that he knew about the outstanding warrant for his arrest.

To preserve a challenge to a jury instruction, an appellant must have objected to the charge at trial. **See Commonwealth v. Davis**, 273 A.3d 1228, 1246 (Pa. Super. 2022). A general objection to a jury charge will not preserve an issue for appeal, specific exception must be taken to the allegedly improper language. **See** Pa.R.A.P. 302(b); **see also** Pa.R.Crim.P. 647(C) (providing that no portion of a jury instruction may be assigned as error unless specific objections are made thereto before the jury retires to begin its deliberations).

The trial court found that Hickson waived his claim by failing to raise an objection to the instruction. **See** Trial Court Opinion, 1/31/22, at 7-8 (unnumbered). We agree with the trial court that Hickson did not preserve his appellate challenge to the trial court's flight instruction. **See** Trial Court Opinion, 1/31/22, at 8. Hickson did not object to the instruction and his claim

---

[7] Hickson cites no law for the proposition that properly admissible other crimes evidence is excludable because a defendant would have to implicate himself in another crime to refute that evidence. Moreover, having himself elicited Officer Colon's testimony about the drugs found on his arrest, Hickson had the means to suggest an alternate reason for his flight without offering his own allegedly compromising testimony.

is therefore unreviewable on appeal. ***See Davis***, 273 A.3d at 1246; ***see also*** Pa.R.A.P. 302(b); Pa.R.Crim.P. 647(C).[8]

Even if Hickson's unpreserved jury instruction challenge were reviewable, it would fail. A trial court has broad discretion in formulating jury instructions where it presents the law to the jury in a clear, adequate, and accurate manner. ***See Lukowich***, 875 A.2d at 1174. We review jury instructions for an abuse of discretion or error of law. ***See Commonwealth v. Rush***, 162 A.3d 530, 540 (Pa. Super. 2017). Trial courts are invested with broad discretion in crafting jury instructions, and such instructions will be upheld where they clearly and accurately present the law to the jury. ***See Commonwealth v. Simpson***, 66 A.3d 253, 274 (Pa. 2013). A reviewing court considers the entire charge as a whole, rather than isolated fragments, and considers it against the background of all evidence presented to determine whether error is committed, *i.e.*, if the instruction as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury on a material issue. ***See Commonwealth v. Grimes***, 982 A.2d 559, 564 (Pa. Super. 2009). A flight instruction is proper where a person has reason to know that he was wanted for a crime and flees or conceals himself from law enforcement

---

[8] Hickson claims he preserved his jury instruction issue by objecting to the admission of evidence of his flight. The law is otherwise. ***See Commonwealth v. Baker***, 963 A.2d 495, 505-06 (Pa. Super. 2008) (holding that an appellant does not preserve an objection to a jury instruction where he states a request for a jury instruction but does not object to the instruction the trial court gives).

authorities. *See Commonwealth v. Tha*, 64 A.3d 704, 714 (Pa. Super. 2013).

The trial court gave a flight instruction that was permissive, allowing the jury to determine whether the flight evidenced consciousness of guilt and informing them that flight alone was not sufficient to prove guilt:

> [A] defendant's subsequent flight from the scene of a crime . . . is not sufficient to establish that a defendant committed a crime. The defendant's presence at the scene of the crime or his subsequent flight or knowledge, however, may be considered by the jury along with other evidence in the case. There was evidence, including[] the testimony of Officer Jose Colon that tended to show that the defendant fled from the police . . .. **the credibility, weight and effect of this evidence is for you to decide.**
>
> Generally speaking, when a crime has been committed and a person thinks he is or may be accuse of committing it and he flees or conceals himself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. **A person may feel or hide for some other motive and may do so even though innocent.** Whether the flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted the flight or concealment.

N.T., 8/12/21, 160-62 (emphases added).

Evidence that the police had attempted to serve an arrest warrant at Hickson's house and that Hickson fled from Officer Colon tended to show he had reason to know that he was wanted for this crime and fled or concealed himself from authorities. The trial court's closing instruction, which allowed the jury to determine whether Hickson's actions manifested consciousness of

guilt, closely followed the Standard Criminal Jury Instruction § 3.14, and was properly issued under the facts of this case. *See Tha*, 64 A.3d at 714.[9] Thus, even had Hickson preserved his challenge to the trial court's instruction, he would not be due relief.

In his final issue, Hickson contends that the evidence was insufficient to support his convictions for attempted murder and aggravated assault because the evidence did not show his specific intent to kill or seriously injure the victim. He directs our attention to the absence of testimony that he pointed his gun at the victim while shooting.

When reviewing a sufficiency of the evidence claim, an appellate court determines whether the evidence, viewed in the light most favorable to the Commonwealth, and with all reasonable inferences therefrom, is sufficient to establish every element of the offense beyond a reasonable doubt. *See Commonwealth v. Haney*, 131 A.3d 24, 33 (Pa. 2015). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *See Commonwealth v. Williams*, 255 A.3d 565, 578 (Pa. Super. 2021).

A person commits the crime of attempt when with the intent to commit a specific crime he does any act which constitutes a substantial step toward

---

[9] Hickson asserts on appeal that he fled only because he had drugs in his possession. The trial court's instruction did not preclude the jury from crediting this explanation. That the jury did not accept Hickson's version of events does not prove that it was an error of law to give a flight instruction that the facts of record supported.

its commission. ***See*** 18 Pa.C.S.A. § 901(a). Evidence is sufficient to sustain a conviction of attempted murder if the accused takes a substantial step toward the commission of a killing, with the specific intent to commit such an act. ***See Commonwealth v. Dale***, 836 A.2d 150, 153 (Pa. Super. 2013). A person commits aggravated assault where, *inter alia*, he attempts to cause serious bodily injury to another, ***see*** 18 Pa.C.S.A. § 2702(a)(1), or attempts to cause bodily injury to another with a deadly weapon. ***See*** 18 Pa.C.S.A. § 2702(a)(4). A person is presumed to intend the natural and probable consequences of his actions. ***See Commonwealth v. Lewis***, 911 A.2d 558, 564 (Pa. Super. 2006). Intent may be provided by direct or circumstantial evidence and inferred from acts, conduct, or attendant circumstances). ***Cf. Commonwealth v. Matthew***, 909 A.2d 1254, 1259 (Pa. 2006) (holding that an accused attempts to cause serious bodily injury to another with a deadly weapon by repeatedly threatening to kill him even without firing a single shot); ***see also Commonwealth v. Sanders***, 627 A.2d 183, 187 (Pa. Super. 1993) (holding that accused attempted to cause bodily injury to his victim where he held a gun to his head and threatened to kill him).

The trial court found that Brown's prior videotaped testimony, which was admitted as substantive evidence at trial, the descriptions by other eyewitnesses, and surveillance video from shortly before the shooting, showed that Hickson repeatedly threatened to kill Brown, drew a gun when Brown

turned around, and fired his gun repeatedly in Brown's vicinity. **See** Trial Court Opinion, 1/31/22, at 8-11.

We affirm the trial court's conclusion that the evidence was sufficient to sustain Hickson's attempted murder and aggravated assault convictions. Hickson took a substantial step toward killing the victim when he threatened repeatedly to kill him, drew a gun from his waistband, and fired several shots that struck the victim's car, one of which left a strike mark on the outside of the car and one of which penetrated the interior. **See Matthew**, 909 A.2d at 1259; **Dale**, 836 A.2d at 153. The same evidence of Hickson's threats to kill Brown, Brown's statement that he crawled to his car after the first shot and got inside, and that Hickson's bullets struck the outside of Brown's car and penetrated its interior was sufficient to prove Hickson's intent to inflict serious bodily injury on Brown, and his intent to inflict bodily injury with a deadly weapon. **See Matthew**, 909 at 1259; **see also Lewis**, 911 A.2d at 564; **Sanders**, 627 A.2d at 187. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2022

- 17 -