J-A21010-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA,     IN THE SUPERIOR COURT OF
PENNSYLVANIA

            Appellee

                v.

DOUGLAS EUGENE STEPHENSON,

            Appellant          No. 819 WDA 2016

Appeal from the PCRA Order Entered May 9, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016742-2009

BEFORE:   BENDER, P.J.E., OLSON, J., and STABILE, J.

MEMORANDUM BY BENDER, P.J.E.:       FILED NOVEMBER 20, 2017

Appellant, Douglas Eugene Stephenson, appeals from the post-conviction court's May 9, 2016 order denying his petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

Briefly, a jury convicted Appellant of second-degree murder, robbery, and conspiracy to commit robbery, based on evidence that he and a cohort, Travis Hawkins, attempted to rob a jitney driver, during which Hawkins shot and killed the driver.[1] Appellant was sentenced to a term of life incarceration, without the possibility of parole, for his murder conviction, and a consecutive term of 72 to 144 months' incarceration for his conspiracy

_____

[1] For a detailed recitation of the facts of Appellant's case, see PCRA Court Opinion (PCO), 1/19/17, at 2-5.

offense. This Court affirmed Appellant's judgment of sentence on August 6, 2013, and our Supreme Court denied his subsequent petition for allowance of appeal. Commonwealth v. Stephenson, 83 A.3d 1058 (Pa. Super. 2013) (unpublished memorandum), appeal denied, 81 A.3d 77 (Pa. 2013).

On April 2, 2014, [Appellant] filed the pro se PCRA petition that underlies the present appeal. Counsel was appointed and an amended petition was filed on Appellant's behalf on September 9, 2015. Following a PCRA hearing on May 9, 2016, the court issued an order denying Appellant's petition. Appellant filed a timely notice of appeal, and he also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement. Thereafter, the court filed a Rule 1925(a) opinion addressing the following three claims that Appellant raises herein:

I. Whether trial counsel gave ineffective assistance for failing to request a full and proper instruction advising that the jury cannot use certain statements made by witnesses as substantive evidence but they are only to be used as impeachment?

II. Whether trial counsel gave ineffective assistance for failing to object to written instructions being sent to the jury, in lieu of oral instructions, which violated Pa.R.Crim.P. 646(C)(4)?

III. Whether the trial court gave an illegal sentence [on] conspiracy to commit robbery when, under the facts of this case, criminal conspiracy merged for purposes of sentencing with the crime of second-degree murder?

Appellant's Brief at 5.

We have reviewed the certified record, the briefs of the parties, and the applicable law. We have also reviewed the Rule 1925(a) opinion of The

- 2 -

Honorable Randal B. Todd of the Court of Common Pleas of Allegheny County. We conclude that Judge Todd's well-reasoned decision accurately disposes of the three issues raised by Appellant herein.[2] See PCO at 5-11 (rejecting Appellant's first issue, as he failed to demonstrate that he was prejudiced by trial counsel's not objecting to the jury instruction); id. at 11-12 (finding no merit to Appellant's second issue, as he failed to establish arguable merit in, or resulting prejudice from, his claim that trial counsel should have objected to the court's sending a note to the jury in response to a question); id. at 14-15 (rejecting Appellant's contention that his sentence is illegal because his conspiracy for robbery conviction should have merged for sentencing purposes with his second-degree murder offense).[3]

_____

[2] We note that Appellant presented four issues in his Rule 1925(b) statement, but he has abandoned one of those claims in his brief to this Court. Thus, we do not rely on the portion of Judge Todd's decision which addresses Appellant's abandoned issue. See PCO at 12-14.

[3] In response to Appellant's illegal sentencing claim, we add one brief note. Appellant's argument rests on the premise that the felony offense underlying his second-degree murder conviction was conspiracy to commit robbery and, therefore, his sentence for conspiracy must merge with his murder sentence. This argument is meritless for several reasons, but two are worth mentioning. First, conspiracy to commit robbery is not a felony offense that can underlie a second-degree murder conviction. See 18 Pa.C.S. §§ 2502(b) ("A criminal homicide constitutes murder of the second degree when it is committed while [the] defendant was engaged as a principal or an accomplice in the perpetration of a felony."); 2502(d) (defining "Perpetration of a felony" as: "The act of the defendant engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping."). Second, Appellant was convicted of robbery in this case, and that offense
(Footnote Continued Next Page)

Accordingly, we adopt Judge Todd's rationale as our own, and affirm the order denying Appellant's PCRA petition on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2017

(Footnote Continued) ————————————

merged with his murder conviction for sentencing purposes. See Order of Sentence, 11/7/11. Thus, Appellant's argument that his conspiracy to commit robbery conviction should also merge is meritless.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA

v.

DOUGLAS EUGENE STEPHENSON,

Petitioner.

CRIMINAL DIVISION

NO:    CC200916742

Appeal

**OPINION**

JUDGE RANDAL B. TODD

COPIES SENT TO:

Stephen A. Zappala, Jr.
District Attorney

By

Michael Streily, Esquire
Assistant District Attorney
401 Courthouse
436 Grant Street
Pittsburgh, PA 15219

Counsel of Record for Petitioner:

Thomas N. Farrell, Esquire
Farrell & Associates
100 Ross Street, Suite 1
Pittsburgh, PA 15219

Douglas Eugene Stephenson, Petitioner
#KG4514
SCI Camp Hill
P.O. Box 200
Camp Hill, PA 17001-8837



# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) ) ) | CRIMINAL DIVISION |
| v. | ) ) | NO:  CC200916742 |
| DOUGLAS EUGENE STEPHENSON, | ) ) ) | |
| Petitioner. | ) | |

TODD, J.

January 19, 2017

## OPINION

This is an appeal from an order entered on May 9, 2016 dismissing Petitioner's PCRA

Petition after a hearing on May 3, 2016.  On June 8, 2016 Petitioner filed a timely Notice of

Appeal.  On June 20, 2016 a 1925(b) Order was entered ordering Petitioner to file a Concise

Statement of Matters Complained of on Appeal.  On July 11, 2016 Petitioner filed an Extension

for Statement of Errors Complained of on Appeal which was granted by Order of July 12, 2016.

On July 14, 2016 Petitioner filed his Statement of Errors Complained of on Appeal setting forth

the following claims:

> "1.    Whether trial counsel gave ineffective assistance for failing to request a full and proper instruction advising that the jury cannot use certain statements made by witnesses as substantive evidence but they are only to be used as impeachment?
>
> 2.    Whether trial counsel gave ineffective assistance for failing to object to written instructions being sent to the jury, in lieu of oral instructions, which violated Pa.R.Crim.P. 646(c)(4)?

3.  Whether trial counsel gave ineffective assistance when she permitted the Commonwealth to present the taped statement of Travis Hawkins, the Co-Defendant, in violation of the Confrontation Clauses of the Pennsylvania and United States Constitutions?

4.  Whether the trial court gave an illegal sentence of conspiracy to commit robbery when, under the facts of this case, criminal conspiracy merged for purposes of sentencing with the crime of second degree murder?"

## BACKGROUND:

The factual background regarding this case was set forth in the 1925(b) opinion of January 14, 2013 as follows:

"This matter arises out the shooting death of James William, Jr., a 53 year old jitney driver in the Sheridan area of the City of Pittsburgh on July 7, 2009. The police received a call in the early morning hours of July 7, 2009 that a vehicle had run into a yard at the corner of Zephyr and Ashlyn Streets. (T., p 33) Investigating officers found a 1998 Jeep Cherokee crashed in the yard with an unresponsive black male slumped over in the driver's seat of the vehicle with the motor running, the vehicle in gear and the headlights on. (T., p. 38) Paramedics called to the scene at 1:55 a.m. found the victim had sustained a fatal gunshot wound to his chest. (T., p. 60) The area was secured and processed as a crime scene. The vehicle was examined for fingerprints and a partial left palm impression print was obtained from the passenger's side window. (T., p. 105) A search and canvas of the neighborhood was performed but there were no witnesses discovered and no additional evidence was recovered. (T., pp. 67-71)

At trial the Commonwealth called Dr. Karl E. Williams of the Allegheny County Medical Examiner's Office who testified that the victim died of a gunshot would that entered the left side of his chest, went through the right side of the heart, the diaphragm, the liver and then exited the right side of his body. (T., p. 77) Dr. Williams also testified that the victim did not have signs of any bruises, scratches, scrapes or contusions on his head or neck. (T., p. 83)

The Commonwealth then called Detective Vonsal Boose who testified that on October 9, 2009, approximately 3 months after the shooting, Dana Williams was brought to the police station by a family member because she purportedly had information concerning the shooting. (T., 123) Detective Boose testified that Dana Williams described the events related to the shooting, gave a recorded statement and viewed a photo array. (T., p. 123) Based on information supplied by Dana Williams, two additional witnesses were developed, Dominique Clark

2

and her sister, Taneshia Clark. Both Dominique Clark and Taneshia Clark gave statements to the police on October 15, 2009. (T., pp. 190-193; 209-214)

The Commonwealth called Dana Williams, Dominique Clark and Taneshia Clark to testify at trial. Each of these witnesses testified, however, that they could not recall the events of July 7, 2009. Dana Williams did identify Defendant as "CK" and acknowledged that she had given a statement to the police, but testified repeatedly that she did not recall the events on the night in question. (T., pp. 130-132) Consequently, the tape recording of her interview with police on October 9, 2009 was played for the jury. (T., p. 134) In her taped statement she stated that co-defendant, Travis Hawkins, (a/k/a "Twerk") approached the victim with a gun. She stated the following:

"Twerk goes to the jitney driver's side, pulls the gun up to him. The jitney driver tries to pull the gun out of his hand. Basically, they was like tossing like." (*Dana Williams Statement,* October 9, 2009 -- p. 5)

"As Twerk and the jitney driver was like fighting, not really fighting but he was trying to take the gun out of his hand." and ". . . that's when Twerk pulled the trigger." (*Dana Williams Statement,* October 9, 2009 – p. 6)

She further stated that she saw Defendant giving Hawkins the gun used in the robbery. She also stated that Defendant went to the passenger's side and "started punching the driver in the head. (*Dana Williams Statement,* October 9, 2009 – p. 6)

Dana Williams' testimony from the preliminary hearing of November 13, 2009 was also read to the jury. (T., pp. 164-173) During this testimony Dana Williams again testified that Defendant handed the gun to Hawkins and that Hawkins then proceeded to the driver's side door of the vehicle at which time a struggle occurred between Hawkins and the victim. She then testified that, "CK walked to the passenger's side, opens the door, and I see him punching the jitney driver in the head", at which point the gun went off. (T., p. 160)

Dominique Clark also acknowledged that she was present on the night of the shooting and that Defendant was present. (T., p. 181) However, she also testified that she either could not recall what transpired or was told what to say and what to write by the police. (T., pp. 182-187) Dominique Clark's statement of October 15, 2009 was then played. She likewise stated that she saw a boy with "his whole body is in the jitney driver's window." (*Dominique Clark Statement,* October 15, 2009 – p. 4) She stated that while the victim was struggling with the gunman, "CK and his friend were on the passenger's side." (*Dominique Clark Statement,* October 15, 2009 – p. 5) She described that his arm was in the vehicle, but his body wasn't. (*Dominique Clark Statement,* October 15, 2009 – p. 8)

3

The Commonwealth then called Taneshia Clark who also acknowledged being present and identified Hawkins as the shooter, but denied seeing Defendant or seeing Defendant near the passenger's side of the vehicle door and stated that she was told to write on the array that Defendant was on the passenger's side. (T., pp. 199-202)

The Commonwealth then called Detective James McGee who testified to his interview with Taneshia Clark and her description of the events that night. Detective McGee testified that Taneshia Clark stated:

"At that time Mr. Hawkins, who she referred to as Twerk, and Mr. Stephenson, who she called CK, stated that those two left a group of people, walked down towards where the jitney was. Ms. Clark said that Mr. Hawkins approached the driver's side of the vehicle, and Mr. Stephenson went to the passenger's side of the vehicle. She said as soon as they reached the vehicle, she saw Mr. Hawkins reach in and was tussling with the driver. She said she believed they were tussling over a gun. She never saw it, but she thought it was a gun. At the same time she saw Mr. Stephenson leaning in the passenger's side of the window also tussling with the driver of the vehicle. She said as soon as they started doing that, she heard one gun shot." (T., pp. 210-211)

The taped statement of Taneshia Clark was then played for the jury. (T., p. 215) In her taped statement she, in fact, stated that she saw Hawkins and Defendant go to the car and that she saw Hawkins and the victim wrestling for the gun. She further said that while Hawkins and the jitney driver were "tussling" over the gun, that Defendant was on the passenger's side of the car and that his upper body was in the car when she heard the gun shot. (*Taneshia Clark Statement*, October 15, 2009 – pp. 5-6)

After it was determined that co-defendant, Travis Hawkins, was invoking his Fifth Amendment rights and refusing testify, the Commonwealth played the taped statement of Travis Hawkins. (T., p. 175) In Hawkins' statement of October 16, 2009, after waiving his *Miranda* rights, Hawkins stated that:

"I went up there and I pointed the gun to the driver, pointed the gun to him; said, Throw it off. He grabbed the gun, he started wrestling with the gun and me, I was scared. So, I tried to pull back with the gun with both hands and then it accidentally shot." (*Travis Hawkins Statement*, October 16, 2009 – p. 3)

He also testified that he informed Defendant that he was about to rob the victim and, although he initially changed his mind, he ultimately decided to do it. He testified he didn't know whether someone else was on the passenger's side of the car because "I was too scared. I was too focused on trying to grab the gun." (*Travis Hawkins Statement*, October 16, 2009 – p. 4) The Commonwealth also called Detective John Godlewski, an expert in fingerprint analysis, who testified

4

that the partial left palm impression lifted from the passenger window of the deceased's vehicle belonged to Defendant. (T., p. 114)

The Commonwealth then called Detective James Smith who testified that Defendant had a tattoo on his right hand that said "CK All Day" and also testified that the phrase "throw it off" means the same as "stick em up". (T., p. 178)

After being appropriately instructed, the jury found Defendant guilty as set forth above.

The jury returned a verdict on August 3, 2011 finding Petitioner guilty of Second Degree Murder, Robbery - Serious Bodily Injury and Criminal Conspiracy - Robbery. Petitioner was sentenced to a term of life imprisonment for Second Degree Murder and a consecutive term of 72 to 144 months for Criminal Conspiracy - Robbery. On August 6, 2013 the Superior Court affirmed the judgment of sentence. On November 26, 2013 Petitioner's Petition for Allowance of Appeal to the Supreme Court was denied. On April 2, 2014 Petitioner filed a *pro se* PCRA Petition and on May 13, 2014 counsel was appointed. Petitioner's Motions for Extension of Time to File an Amended PCRA Petition were granted and an Amended PCRA Petition was filed on September 9, 2015. The Commonwealth filed an Answer to Amended PCRA Petition on February 4, 2016. On May 2, 2016 a hearing was held at which time trial counsel testified addressing the issues raised in the petition. On May 9, 2016 an order was entered dismissing the PCRA Petition and this appeal followed.

## DISCUSSION:

Petitioner's first issue is that trial counsel was ineffective for failing to request a jury instruction that certain alleged inconsistent statements made by Dana Williams and Taneshia Clark could only be used for impeachment purposes and not as substantive evidence. Petitioner also argues that counsel was ineffective for failing to object to the following instruction that was given to the jury:

"Now, you have heard evidence that witnesses make statements on earlier occasions that were inconsistent with their present testimony. You may, if you

5

choose, regard this evidence as proof of the truth of anything that the witness said in an earlier statement. You may also consider this evidence to help you judge the credibility and the weight of the testimony given by the witness at the time of trial." (T., pp. 284-285)

Petitioner submits that the instruction fails to differentiate between those inconsistent statements that might be used as substantive evidence and those that may only be used for impeachment purposes. A prior inconsistent statement made by witness can only be used as substantive evidence when the witness testifies, is subject to cross-examination about the statement, and the prior inconsistent statement of the witness was either: 1) given under oath and subject to the penalty of perjury at a trial, hearing or other proceeding or in a deposition; 2) is a writing signed were adopted by the witness; or, 3) is a verbatim contemporaneous electronic audio tape or videotape recording of an old statement. The law concerning the use of prior inconsistent statements is set forth in Pa.R.E. 803.1 and *Commonwealth v. Lively*, 610 A.2d 7 (1992). Rule 803.1 provides:

"The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:
(1) Prior Inconsistent Statement of Declarant-Witness. A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:
(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;
(B) is a writing signed and adopted by the declarant; or
(C) is a verbatim contemporaneous electronic, audiotaped, or videotaped recording of an oral statement." Pa.R.E. 803.1

In *Commonwealth v. Lively*, 610 A.2d 7 (1992) the Pennsylvania Supreme Court held:

In an effort to ensure that only those hearsay declarations that are demonstrably reliable and trustworthy are considered as substantive evidence, we now hold that a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements.
*Commonwealth v. Lively*, 610 A.2d 7, 10 (1992)

6

Petitioner alleges that Detective Evans and Detective McGee testified concerning statements made by Dana Williams and Taneisha Clark that were neither recorded in any manner nor adopted by them and, therefore, the jury should have been instructed that those statements could be used for impeachment purposes only.[1] Specifically Petitioner alleges that Detective Evans testified that Dana Williams told him that she was afraid of retaliation when he testified as follows:

> "Q.     Did she give an explanation as to why she took three months before she came forward?
>
> A.      Yes, she did. She said that there were threats involved.
>
>         Ms. Foreman: Objection; that is hearsay.
>
>         The Court:     I will sustain the objection. It is hearsay.
>
> Q.      What did she tell you?
>
> A.      She told me she was afraid of retaliation.
>
> Q.      What did she tell you about the incident?" (T., pp. 145-146)

Detective Evans also testified on cross-examination:

> "Q.     So she came right into the police station and came up to you or another detective and said, I have a bunch of information on a homicide?
>
> A.      I believe she called first before she came and spoke to my boss.
>
> Q.      You said that prior to her testifying here today you saw her crying in the hallway?
>
> A.      That's correct.
>
> Q.      Is that your testimony?
>
> A.      Yes.

---

[1] There is no dispute that prior inconsistent statements made by Williams, Taneshia Clark and Dominique Clark contained in their preliminary hearing transcripts and tape recorded statements that were presented at trial could be used as substantive evidence and the jury instruction set forth above is correct as to those statements.

7

Q. You keep saying, well, she was afraid. You don't have any firsthand knowledge that she was fearful? You don't know why she was crying? You are just assuming she was afraid?

A. She told me she was afraid.

Q. She told you she was afraid?

A. Yes.

Q. She didn't tell you why?

A. She said she's afraid of retaliation." (T., pp. 151-152)

The statements, which were allegedly inconsistent with her trial testimony, were neither recorded in any manner nor adopted by Williams.

In addition, Detective James McGee, Detective McGee testified concerning statements allegedly made by him by Taneshia Clark as follows:

"Miss Clark said that Mr. Hawkins approached the driver side of the vehicle, and Mr. Stephenson went to the passenger side of the vehicle. She said as soon as they reach the vehicle, she saw Mr. Hawkins reach in and was tussling with the driver. She said she believed they were tussling over the gun. She never saw it, but she thought it was a gun. At the same time she saw Mr. Stephenson leaning in the passenger side of the window also tussling with the driver of the vehicle. She said as soon as they started doing that, she heard one gunshot." (T., pp. 210 – 211)

The statement attributed to Clark by Detective McGee that Petitioner was "also tussling with the driver" was not recorded or otherwise adopted by Clark. In fact, Clark's recorded statement only stated that Petitioner was on the passenger side of the vehicle, the door was open, and Petitioner was leaning in. She also stated that when Hawkins and the victim were tussling over the gun she did not see what Petitioner was doing. (*Taneshia Clark Recorded Statement*, pp. 5-6)

After Taneshia Clark's taped statement was played for the jury, Detective McGee was cross-examined as follows:

8

"Q.    Now, you just sat here and listened to this taped statement, but prior to the statement being played, when you were asked by Mr. Stadtmiller what Taneshia said to you that day, you indicated that she said she saw my client tussling with the victim in the car, on the other side of the car?

A.    That's correct.

Q.    But you would agree with me that during the taped statement when you asked her: Okay, well, if Twerk and the jitney driver were tussling over the gun, what was CK doing? She responds: I don't know what he was doing. You would agree that she never mentioned that he was tussling in anyway?

A.    On the tape she didn't." (T., p. 216)

In order for Petitioner to be entitled to relief on the basis that trial counsel was ineffective, Petitioner must show by a preponderance of the evidence ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Brady*, 741 A.2d. 758, 763 (Pa. Super. 1999)  This standard requires Petitioner to show: (1) that the claim is of arguable merit; (2) that counsel had no reasonable, objective basis for his actions; and (3) that, but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different, that is, that the petitioner was prejudiced by the alleged ineffectiveness of counsel. *Commonwealth v. Kimball*, 724 A.2d 326, 333 (1999).  Counsel is presumed to be effective, however, and the burden rests with the petitioner to overcome that presumption. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (1987), *Commonwealth v. Pirela*, 580 A.2d 848, 850 (1990), *appeal denied*, 594 A.2d 658 (1991).  If a petitioner fails to meet any one of these three prongs, then an evidentiary hearing is not necessary. *Commonwealth v. Wells*, 578 A.2d 27, 32 (Pa. Super. 1990)

At the PCRA hearing, when questioned about failing to object to the instruction counsel, although indicating that she had cross-examined Detective McGee about his statement, testified

that she could not recall if she had a strategy as it pertained to the court's instruction to the jury. (T., pp. 10-12)

The Commonwealth concedes that the testimony of Detective Evans and Detective McGee as set forth above concerning alleged prior inconsistent statements of Dana Williams and Taneshia Clark would not have been appropriately admitted as substantive evidence. However, as argued by the Commonwealth, it is clear that Petitioner has failed to demonstrate any actual prejudice as a result of any failure by trial counsel to request an instruction from the court that certain statements of Williams, Taneshia Clark and Dominique Clark could only be considered for impeachment purposes. An examination of the prior statements that could properly be considered as substantive testimony indicate that Petitioner approached the passenger side of the vehicle and was either striking or hitting the victim. Specifically, Dana Williams testified that Petitioner went to the passenger side of the vehicle, opened the door and started punching the jitney driver in the head. (*Dana Williams Statement*, p. 6) In Taneshia Clark's statement, she stated that Petitioner was on the passenger side of the vehicle with the door open, leaning in the vehicle while Hawkins was leaning in and tussling with the victim when the gun went off. (*Taneshia Clark Statement*, pp. 5-7) In addition, Dominique Clark's statement also placed Petitioner next to the vehicle on the passenger side with his arm in the vehicle. (*Dominique Clark Statement*, pp. 5-8)

As there was properly admitted substantive evidence that Petitioner was at the passenger side of the vehicle, with the door open, reaching or leaning in and punching the victim at or about the time Hawkins was struggling with the victim over the gun when it went off, Petitioner has failed to establish that, but for the failure to request the jury instructions as alleged, that there

10

is a reasonable probability that the outcome of the proceedings would have been different.

Therefore, there is no merit to Petitioner's claim on this issue and it was properly dismissed.

Petitioner next argues that counsel was ineffective for failing to object to written instructions being sent to the jury, in lieu of oral instructions, in violation of Pa.R.Crim.P. 646(c)(4). Rule 646 provides as follows:

> **Rule 646. Material Permitted in Possession of the Jury**
> Currentness
> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
> (B) The trial judge may permit the members of the jury to have for use during deliberations written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed.
> (1) If the judge permits the jury to have written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed, the judge shall provide that portion of the charge in its entirety.
> (2) The judge shall instruct the jury about the use of the written charge. At a minimum, the judge shall instruct the jurors that
> (a) the entire charge, written and oral, shall be given equal weight; and
> (b) the jury may submit questions regarding any portion of the charge.
> (C) During deliberations, the jury shall not be permitted to have:
> (1) a transcript of any trial testimony;
> (2) a copy of any written or otherwise recorded confession by the defendant;
> (3) a copy of the information or indictment; and
> (4) except as provided in paragraph (B), written jury instructions.
> Pa. R. Crim. P. 646

The record reflects that the jury began its deliberations at 11:50 a.m. (T., p 303) At 1:30 p.m. the jury foreperson submitted the following question:

> "If guilt is found for felony robbery, are all murder charges still open, options? If so, could you please redefine all of them." (T., p. 304)

In response to the question, counsel was advised that the following response would be given to the jury:

11

"Dear Mr. Foreperson and Members of the Jury, each of the three counts that the defendant is charged with are separate and distinct charges. You have to decide guilty or not guilty on each count separately. If you feel it is necessary to be recharged on criminal homicide, please inform my tip staff, Mr. Woodcock." (T., pp. 304-305)

Upon receiving the response, the jury foreperson indicated that the jury wished to be recharged on the issue of criminal homicide. Consequently, the jury was brought back to the courtroom and re-instructed in the presence of counsel and Petitioner. (T., pp. 306 – 312)

Clearly the response to the jurors' question was not an instruction given in violation of Pa.R.Crim.P. 646 (c)(4). There was no instruction on the law given to the jury in the note. It simply advised them that they were to deliberate on each count separately as previously instructed and to advise the court if they needed further clarification or reinstruction. In response to the note the jury requested the reinstruction and were, therefore, brought back to the courtroom for further instruction. Consequently, there was no violation of Rule 646 (c)(4). In addition, Petitioner has failed to present any evidence demonstrating that he was in any way prejudiced by the note that was given to the jury. Therefore, counsel was not ineffective in failing to object to the note.

In Petitioner's third issue on appeal, Petitioner claims that trial counsel was ineffective when she failed to object to the admission of the taped statement of Travis Hawkins. At the PCRA hearing trial counsel testified about her strategy regarding Hawkins' taped statement. Counsel testified:

"I believe that Mr. Hawkins was deemed unavailable to testify and that's why the taped statement was brought in. However, that statement was probably the best evidence that we had to go along with the theory of our case, so I wouldn't have objected to it because I believe that it helped Mr. Stephenson. He and I had a lot of conversations about the defense in that case, and from what I recall the defense was that Mr. Hawkins was the perpetrator and the sole perpetrator of the robbery, that he was the one who masterminded the robbery. When they got the gun,

12

approached the jitney driver, tussled with the jitney driver, shot him, and everyone ran. The taped statement actually only one time referenced a CK, which was Mr. Stephenson's street name at the time, and that reference was made in conjunction with Mr. Hawkins saying something like he was telling him he was going to get a gun and go rob this person, and it is Mr. Stephenson, CK, saying, no, don't do it. That's the only reference to CK in there. In fact, the whole statement was Mr. Hawkins saying, you know, he devised this plan to rob this person, he went and got the gun, he went to the jitney car, he tussled with him, and the guy was shot. And he was even asked during the statement whether or not there was anybody else involved, and he indicated he didn't recall anybody. So I wouldn't have objected because I believe it was helpful to our defense." (PCRA H.T., pp 7-8)

Petitioner did not testify at the PCRA hearing to refute counsel's testimony that he and counsel agreed to a trial strategy that included the use of Hawkins' statement. Petitioner asserts that without Hawkins' statement, the Commonwealth would not have been able to establish the fact that the shooting occurred during a robbery and thus provide a basis for the conviction for second-degree murder. In response, trial counsel stated:

"Well, there were other witnesses, girls that came in to testify later and indicated there was a robbery and a gun involved, so, no, I think other statements would've come in any way." (PCRA H.T., p. 8)

This assertion is confirmed by a review of the record. In addition, counsel's strategy was evident in her closing argument when she stated:

"I want to talk about the statement of Mr. Travis Hawkins, because I think this is the most important piece of evidence you were given. Mr. Standtmiller asked to play the tape of Travis Hawkins. I didn't object. He is the co-conspirator. I wanted you to hear it. I wanted you to hear the words out of this man's mouth as he told them confessed to the police that he committed the crimes that day and he committed the crime of murder. (T.T., p. 250)

Counsel further stated in her argument:

"This is a man who goes in and who confesses to the police that he acted alone, never indicated that Douglas enticed him in any way, that he acted alone, he had the gun, he went over to the car, he made the choice, he made the decision by himself. There was not an agreement, not a conspiracy. (T.T., p. 250)

13

A review of Hawkins' statement indicates that Hawkins did not clearly implicate Petitioner as a participant in the robbery or shooting. (*Amended PCRA Petition Exhibit 1*) As trial counsel testified, there was one reference to "CK" in which Hawkins stated that after seeing the jitney parked on Zephyr Street he "informed CK, told him that I was about to rob him. He said, no at first and then I said No, but f _ _ k it." (*Travis Hawkins Statement*, p. 3) Hawkins then stated that when he stated that, that meant that he was "not going to do it." (*Travis Hawkins Statement*, p. 3) There is no further reference in the remainder of the statement to Petitioner. Petitioner's allegation that there is nothing in the statement that helps his case is contradicted by the statement itself. Clearly counsel's strategy was to use Hawkins' recorded statement to argue to the jury that Hawkins never implicated Petitioner in the shooting in any manner and that he acted alone. An examination of counsel's closing argument shows that she emphasized Hawkins' statement and used it to buttress the further argument that the testimony of Dana Williams, Taneshia Clark and Dominique Clark was contradictory and should be rejected.

A review of the entire record indicates that counsel weighed the potential benefit of the admission of Hawkins' statement in light of all of the other evidence in the case. Counsel established a reasonable strategy for not objecting to the admission of the statement. Therefore, counsel was not ineffective in failing to object to the admission of Hawkins' taped statement.

Petitioner's final claims is that he was given an illegal sentence for conspiracy to commit robbery when, under the facts of the case, criminal conspiracy merged for purposes of sentencing with the crime of second degree murder. Petitioner alleges that his sentence was illegal because he received a life sentence for second degree murder and a consecutive sentence for conspiracy to commit robbery. Specifically, Petitioner argued that the jury was instructed that it could

convict him of second degree murder as either a co-conspirator or as an accomplice. Petitioner alleged that:

"The conspiracy theory incorporated the same elements as the criminal charge of conspiracy. Pursuant to an *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), because the jury was not asked specifically as to what theory they used to convict Petitioner, an increase in sentence cannot occur. In other words, it must be assumed that the jury found Petitioner guilty of second degree murder because of the conspiracy theory. *Id.*" (*PCRA Petition*, p. 19)

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, (2000) the United States Supreme Court held that any finding which results in punishment beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *Commonwealth v. Haughwout*, 837 A.2d 480, 488 (2003) The holding in *Apprendi* is inapplicable in this case. There was no enhancement of the sentence based on a fact not found by the jury. Whether or not Petitioner was found guilty of second degree murder as a co-conspirator or an accomplice is unrelated to his conviction for criminal conspiracy-robbery.

The crime of conspiracy is separate and distinct from the underlying substantive crime. *Commonwealth v. Ritter*, 615 A.2d. 442, 444 (Pa. Super. 1992) Sentences will merge when: (1) the crimes have the same elements, i.e., are lesser included offenses, and (2) the facts of the cases are such that the facts which establish one criminal charge also serve as the basis for the additional criminal charge. *Commonwealth v. Servich*, 602 A.2d. 1338, 1345 (Pa. Super. 1992) Therefore, Petitioner's claim that he was subject to an illegal sentence was appropriately dismissed.

By The Court:

15