J-S39031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONTE RUFFIN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DESH UNITED CORPORATION, | : | No. 1755 EDA 2018 |
| MOHAMMAD A. HOSSAIN, FIESTA | : | |
| PIZZA AND ABDELHALIM ABDELKARI | : | |
| | : | |

Appeal from the Judgment Entered April 27, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  October Term 2015, No. 3327

BEFORE:   GANTMAN, P.J.E., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED AUGUST 21, 2020**

Appellant Donte Ruffin appeals from the judgment entered by the Philadelphia Court of Common Pleas in favor of Appellees Desh United Corporation ("Desh United"), Mohammad A. Hossain, Fiesta Pizza, and Abdelhalim Abdelkari.  Appellant argues that the trial court abused its discretion in allowing certain evidence to be admitted at trial and asserts the jury's verdict was against the weight of the evidence.  We affirm.

On October 29, 2015, Appellant brought a civil action against Appellees seeking damages for an accident that occurred on January 16, 2015, in which Appellant was allegedly hit by a vehicle driven by Appellee Abdelkari. Appellant claimed Appellees Desh United, Hossain, and Fiesta Pizza were also liable for damages he sustained in the accident as Appellant asserted that

_____
\* Former Justice specially assigned to the Superior Court.

Appellee Abdelkari was delivering pizza on behalf of these Appellees at the time of the accident.

On February 1, 2017, after the matter was submitted to arbitration, Appellant was awarded $25,886.00. On March 6, 2017, Appellees appealed the arbitration award and the parties subsequently proceeded to a jury trial.

At trial, Appellant testified that on January 16, 2015, at approximately 7:45 p.m., he and his brother, Shawn Ruffin, were walking eastbound on Chester Avenue to get a drink at the corner store. Notes of Testimony (N.T.), 11/15/17, at 6, 97-99. The men had to wait at the northwest corner of the intersection of 52nd Street and Chester Avenue while the traffic light was red. *Id*. at 7, 97-99. Appellant observed Appellee Abdelkari's Hyundai Santa Fe, which was traveling westbound on Chester Avenue, make a right turn onto 52nd Street, and then stop. *Id*. at 7-9, 98. Appellant alleged that Appellee Abdelkari backed up and struck Appellant's left side, causing Appellant to fall to the ground and lose consciousness. *Id*. at 8, 99. Appellant could not estimate how fast the vehicle was traveling, but claimed Appellee Abdelkari must have been going fast enough to knock him down as he emphasized that he weighed 295 pounds. *Id*. at 10, 107.

Appellant was taken to Penn Presbyterian Hospital where he underwent testing of his head and leg; a CT scan revealed that Appellant's brain did not show any acute trauma and x-rays of his knees did not reveal any fractures. *Id*. at 11-12, 51, 63-64; Nyahay Report (1/19/16), at 1. Appellant was given pain medication and discharged from the hospital. Appellant followed up with

his primary care doctor, who referred Appellant for physical therapy to Woodland Medical, where he also received a knee brace and electric stimulation.  N.T., 11/15/17, at 13-18. When Appellant was later referred for further testing in April 2015, MRI results revealed that that Appellant had a medial collateral ligament tear.[1]  *Id*. at 53.

Appellant claimed to have outstanding medical bills from several providers, which included an individual bill of $8,744.00 from Presbyterian Hospital.  *Id*. at 17.  In addition, Appellant asserted that as a result of the accident, he was fired from three jobs as he had worked at the post office, Walmart, and Staples.  *Id*. at 19-21.  Appellant claimed to have worked more than 100 hours each week before the accident occurred.  *Id*. at 19-21. Appellant clarified that "the first job was from 7 to 3 and the second job is from 3 to 11 and the third job at [S]taples I did 28 hour shifts on the weekends.  I was doing 16 hour shifts on Saturday and Sunday."  *Id*. at 20.

On cross-examination, Appellant admitted that his records from the emergency room only indicated that he was there for four hours, when he had claimed on direct examination he was at the hospital for eight hours.  *Id*. at 109.  In addition, while Appellant had originally stated that he was required to be on bed rest for two weeks after the accident, none of his medical records admitted at trial showed that he was given that restriction.  *Id*. at 110.  While Appellant's counsel claimed Appellant had an outstanding bill at Penn

_____

[1] We have used the spelling of Nyahay's name as stated in his reports, whereas the trial transcript lists the chiropractor's name as "Nayhay."

Presbyterian for $8,744.00, Appellees' counsel presented a bill from the hospital that identified Appellant's out-of-pocket cost as $150.00. *Id*. at 111-12. Appellant's counsel subsequently stipulated that the bill indicated that Appellant was responsible for paying $150.00. *Id*. at 112.

Appellant called his brother, Shawn Ruffin (hereinafter "Shawn") to testify on his behalf. Shawn offered an account of the accident similar to Appellant's testimony and added that he recalled that Appellee Abdelkari had pizza boxes in his car and was wearing a Fiesta Pizza hat. *Id*. at 26-30.

Appellant also presented the testimony of his chiropractor, Robert Nyahay, who opined that he examined Appellant on February 9, 2015, several weeks after the accident. *Id*. at 50. While Nyahay initially recommended that Appellant return to work on February 16, 2015 (a month after the accident), Nyahay changed this recommendation after viewing Appellant's MRI results in April 2015, from which Nyahay determined that Appellant had sustained a medial collateral ligament tear in his right knee, which he opined was a permanent injury that was caused by the accident. *Id*. at 52, 73.

Nyahay admitted that he did not review any of Appellant's medical records prior to the accident and acknowledged that he did not recall seeing in Appellant's records from the emergency room that Appellant had told medical personnel that he had fallen in the thirty days prior to the accident. *Id*. at 64. Nyahay also agreed that he had prepared a report indicating that on May 13, 2015, Appellant had no right knee pain to report and that an examination revealed that Appellant's range of motion in the right knee was

within normal limits and that his muscle testing for the lower extremity was normal. *Id*. at 66-67. While Nyahay filed out paperwork to submit to Walmart for verification of Appellant's injury, Nyahay indicated that Appellant never asked him to fill out any paperwork for the U.S. Postal Service or Staples. *Id*. at 71-72.

Appellee Abdelkari testified with the assistance of an interpreter and claimed that his language barrier prevented him from communicating clearly to the police on the night of the accident. *Id*. at 79-81, 90-91. Appellee Abdelkari gave a different account of how he arrived at the scene of the accident, claiming he was driving on Springfield Avenue (which is parallel to Chester Avenue), turned left onto 52nd Street, and made a u-turn in order to park on the side of the street where he was to make his delivery. *Id*. at 86-88. Appellee Abdelkari claimed that when he stopped to wait for the customer to come to his car, he heard a noise or "a hit" on the left rear side of his car, exited his vehicle, and observed Appellant laying on the ground. *Id*. at 83. Appellee Abdelkari denied hitting Appellant and asserted that Appellant hit his vehicle. *Id*. at 83.

Appellee Abdelkari claimed at that time of the accident, he was making a delivery for one of his employers, a Mexican restaurant called Guac, at the request of one of his coworker, Mohamed Hashem.[2] *Id*. at 84. Appellee

---

[2] The record shows that Appellant did attempt to sue Guac in relation to this accident, but the action was ultimately dismissed for lack of prosecution. N.T., 11/15/17, at 117-19, 127.

Abdelkari denied that he was delivering pizzas at the time of the accident for Fiesta Pizza, where he only worked from 9 a.m. to 4 p.m. *Id*. at 92. Appellee Abdelkari denied that he had pizza boxes visible in his vehicle as pizza is delivered in insulated pouches to keep the product warm for the customer. *Id*. at 92. Appellee Abdelkari also asserted that Fiesta Pizza does not give him a hat or uniform to wear on deliveries. *Id*. at 88.

In addition, Appellee Hossain, a part-owner and manager of Fiesta Pizza, testified that Appellee Abdelkari was an employee of Fiesta Pizza that did not work evenings, did not wear a uniform, and was required to keep pizzas in an insulated bag for delivery. *Id*. at 129-32, 135. Another witness, Mohamed Hashem, testified that at the time the accident occurred, he worked at Guac and had asked his coworker, Appellee Abdelkari to make a delivery on his behalf. *Id*. at 147-48.

At the conclusion of the trial, on November 27, 2017, the jury announced its verdict, in which it made specific findings that Appellee Abdelkari was negligent but that his conduct was not a factual cause of Appellant's injury. Further, the jury found that Appellee Abdelkari was not acting as an agent of Appellees Desh United, Fiesta Pizza, and Hossain at the time of the accident. N.T., 11/16/17, at 52-53. The jury was polled and all jury members agreed with the verdict as stated. *Id*. at 53-54.

On November 27, 2017, Appellant filed a post-trial motion. As the trial court took no action on this motion for over 120 days, Appellees filed a praecipe for the entry of judgment on the verdict, which the prothonotary

entered on April 27, 2018. **See** Pa.R.C.P. 227.4.[3] Thereafter, Appellant filed a notice of appeal on May 29, 2018 and a Statement of Matters Complained of on Appeal on August 17, 2018.

In its initial Rule 1925(a) opinion, the trial court did not address the merits of the appeal as it reasoned that this appeal was untimely filed. On August 21, 2019, this Court remanded the case as we found Appellant's appeal was timely filed within the applicable thirty-day appeal period from the entry of the judgment as the 30th day fell on Sunday, May 27, 2018, and Monday, May 28, 2018 was Memorial Day, a legal holiday. **See** Pa.R.A.P. 903(a); 1 Pa.C.S.A. § 1908.

_____

[3] The relevant provisions of Rule 227.4 provide as follows:

> In addition to the provisions of any Rule of Civil Procedure or Act of Assembly authorizing the prothonotary to enter judgment upon praecipe of a party, the prothonotary shall, upon praecipe of a party:
>
> (1) enter judgment upon the verdict of a jury or the decision of a judge following a trial without jury, or enter the decree nisi as the final decree, if
>
> &ast;&ast;&ast;
>
> (b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration[.]

Pa.R.C.P. 227.4(1)(b).

As a result, this Court directed the trial court to prepare a supplemental opinion to respond to Appellant's arguments within forty-five days of our August 21, 2019 memorandum. The trial court did not file its supplemental opinion until December 19, 2019. The parties were given the opportunity to file supplemental briefs.[4] We now proceed to review the merits of the appeal.

Appellant raises the following issues for our review:

[1.] Did the Trial Judge abuse his discretion when he allowed [Appellees'] counsel to make reference to the police report and/or ask questions to witnesses and solicit answers from witnesses, both directly and indirectly in the Trial of this matter?

[2.] Did the Trial Judge abuse his discretion when he allowed questions at the Trial by referring to a prior Arbitration proceeding and results thereof, when there was no recorded testimony or transcripts of the Arbitration proceeding?

[3.] Did the Trial Judge abuse his discretion when he allowed questions about a photograph purporting to be the accident scene, to [Appellant] at the trial, which was never provided to [Appellant] by Appellees?]

[4.] Was the Jury's verdict against the weight of the evidence?

Appellant's Brief, at 4 (numbered and reordered).

The majority of Appellant's claims challenge the trial court's discretion in allowing the admission of certain evidence. "The admissibility of evidence is a matter addressed to the sound discretion of the trial court and should not

---

[4] Appellees have filed a motion to quash this appeal on the basis that Appellant's supplemental brief was untimely filed. Given that Appellant filed his initial brief in a timely manner and the trial court's supplemental opinion was filed several months beyond the deadline imposed by this Court, we decline to quash this appeal.

be overturned absent an abuse of discretion." ***Kardos v. Armstrong Pumps***, ***Inc.***, 222 A.3d 393, 401 (Pa.Super. 2019) (citation omitted).

Appellant first argues that the trial court abused its discretion in allowing Appellees' counsel to reference the police report filed in this case and to question witnesses about its contents as the police officer who wrote the report was not presented as a witness at trial. We agree with Appellant's claim that the admission of the police report was error.

> Section 3751 of the Vehicle Code specifically provides that a police report "shall not be admissible as evidence in any action for damages ... arising out of a motor vehicle accident." 75 Pa.C.S.A. § 3751(b)(4). Additionally, "[a] police report prepared by an officer who is not a witness to the accident is inadmissible hearsay evidence and should not be admitted into evidence. Nor should a party be able to get such a report into evidence in an indirect manner." ***Rox Coal Co. v. WCAB (Snizaski)***, 570 Pa. 60, 807 A.2d 906, 914 (2002) (citations omitted).

***Phillips v. Lock***, 86 A.3d 906, 921 (Pa.Super. 2014).

Nevertheless, we must evaluate whether the admission of statements from this report was harmless error. "To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining. An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the [fact-finder]'s judgment***." Brown v. Halpern***, 202 A.3d 687, 708 (Pa.Super. 2019) (citations omitted).

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so

overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hairston***, 624 Pa. 143, 168–69, 84 A.3d 657, 671–72 (2014).

In this case, Appellant argues that Appellees improperly referred to a portion of the police report form filled out in connection with this accident, which included an inquiry for the "Intersection type" where the officer had checked a box for "mid-block." N.T. 11/15/17, at 105-106. Appellant suggests that this reference was prejudicial as Appellant had claimed the accident had occurred near the intersection of Chester Avenue and 52nd Street while Appellee Abdelkari had claimed Appellant hit his vehicle mid-block when he was delivering food to a residence.

However, we are not persuaded that Appellant was prejudiced by this admission as the evidence in the police report was cumulative of Appellee Abdelkari's testimony. The officer did not see the accident occur, but recorded the accounts of the parties. Moreover, the jury made a specific finding that Appellee Abdelkari was negligent, but ultimately found that Appellee Abdelkari's conduct was not a factual cause of Appellant's damages. Thus, we fail to see how the admission of this police report affected the jury's verdict. As such, we will not disturb the jury's verdict on this basis.

Second, Appellant claims the trial court abused its discretion in allowing Appellees' counsel to ask Shawn Ruffin on cross-examination about his previous testimony at the parties' arbitration hearing, when this proceeding

had not been transcribed. The trial court reasoned that the references to the prior arbitration hearing were not improper as Shawn's "prior inconsistent statements were not admitted as substantive evidence; instead, evidence relating to the arbitration hearings were admitted solely for the purpose of impeachment." Trial Court Opinion, 12/17/19, at 8.

"It is long settled that a prior inconsistent statement may be used to impeach a witness." *Commonwealth v. Watley*, 153 A.3d 1034, 1040 (Pa.Super. 2016) (quoting *Commonwealth v. Brown*, 448 A.2d 1097, 1102 (Pa.Super. 1982)) (citation omitted).

> The common law has long recognized the right of a party to impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with his testimony at trial, so long as the inconsistency is not collateral to the issues in the case. Such an inconsistent statement need not be under oath. Nor need it be in writing. It is the substance of the statement, i.e., that it conflicts with the testimony of the witness at trial, that determines its admissibility, not its form.
>
> An inconsistent statement may be proved by getting the witness on the stand to admit making it. But where, as here, the witness does not admit making the inconsistent statement, it may be proved by extrinsic evidence, such as the testimony of the person to whom the statement was made. It does not matter whether the witness denies making the inconsistent statement, or whether he says that he does not recall it. In either event, an adverse party has the right to introduce extrinsic evidence that the witness did, indeed, make the inconsistent statement.

*Brown*, 448 A.2d at 1103–1104.

Our Supreme Court has held that "to ensure that only those hearsay declarations that are demonstrably reliable and trustworthy are considered as

- 11 -

substantive evidence, … a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements." ***Commonwealth v. Lively***, 530 Pa. 464, 471, 610 A.2d 7, 10 (1992).

Pennsylvania Rule of Evidence 803.1 provides in relevant part:

The following statements are not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement:

**(1) Prior Inconsistent Statement of Declarant-Witness.** A prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony and:

(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition;

(B) is a writing signed and adopted by the declarant; or

(C) is a verbatim contemporaneous electronic recording of an oral statement.

Pa.R.E. 803.1(1).

As noted above, Appellant's brother, Shawn Ruffin, testified in support of Appellant's version of the events in question. Shawn claimed on direct examination that when the men were crossing the intersection, "out of nowhere there was a reverse car that came back and hit [Appellant]." N.T., 11/15/17, at 28. Appellees' counsel then attempted to impeach Shawn with prior inconsistent statements that he had made at the prior arbitration hearing

that were more consistent with Appellee Abdelkari's version of the events in question:

> [Appellee counsel:] You have testified under oath at previously in an Arbitration; is that correct?
>
> [Shawn Ruffin:]  Yes.
>
> [Appellee counsel:]  And when you testified under oath at the Arbitration, did you admit that [Appellee Abdelkari] made a u-turn on 52nd Street?
>
> [Appellant counsel:] Objection. Side-bar?
>
> [Trial court:] Okay.
>
> ---
> (Whereupon, a discussion was held off the record.)
> ---
>
> [Trial court:]  Re-ask the question.
>
> [Appellee counsel:] At the prior proceeding, did you testify under oath as to [Appellee Abdelkari] making a u-turn on 52nd Street?
>
> [Shawn Ruffin:] No.
>
> [Appellee counsel:] Did you testify that you and your brother were standing on a porch when you were at the prior proceeding under oath?
>
> [Shawn Ruffin:] No.
>
> [Appellee counsel:] Did you testify that you were standing on a porch watching [Appellee Abdelkari] make a u-turn on 52nd Street?
>
> [Shawn Ruffin:]  No.

N.T., 11/15/17, at 38-39.

First, we note that Appellant fails to recognize that Appellees' counsel did not admit evidence of Shawn Ruffin's prior inconsistent statement on this exchange on cross-examination.  After Appellees' counsel inquired as to

whether Shawn made these statements at the arbitration hearing, Shawn denied making the statements. "[I]t is well established that attorney's questions and statements are not evidence." **Commonwealth v. O'Hannon**, 557 Pa. 256, 261–62, 732 A.2d 1193, 1196 (1999) (quoting **Commonwealth v. LaCava**, 542 Pa. 160, 181-82, 666 A.2d 221, 231 (1995)) (finding no evidence of the defendant's prior bad acts was admitted when the prosecutor asked whether the defendant had threatened his co-conspirators and the defendant denied it). We also observe that the trial court extensively instructed the jury that they were the "only judges of believability and the facts in this case." N.T., 11/16/17, at 34, 37-40.

Moreover, Appellant failed to show that the admission of Shawn's prior inconsistent statement could not have been admitted as substantive evidence. The parties concede that Shawn testified at the parties' previous arbitration hearing under oath. As noted above, a prior inconsistent statement given under oath subject to the penalty of perjury at a legal proceeding is considered to have been given under reliable and trustworthy circumstances such that it can be used as substantive evidence in a subsequent trial. **See Lively**, **supra**; Pa.R.E. 803.1(1)(A).

While Appellant emphasizes that the arbitration hearing was not transcribed, Appellant does not provide any support for his argument that to admit a prior inconsistent statement under Pa.R.E. 803.1(1)(A), the statement must been made under oath at a formal legal proceeding <u>and</u> been memorialized in a verbatim contemporaneous recording. As such, we find

that the trial court did not abuse its discretion in allowing Appellees' counsel to ask Shawn about his prior inconsistent statements made under oath at the arbitration hearing.[5]

Third, Appellant argues that the trial court abused its discretion in allowing Appellees to admit a photograph that depicted the scene of the accident as Appellees did not provide the photo to Appellant's counsel in discovery or at any point prior to trial. However, Appellant never objected to the photograph's admission on this basis. Our rules of appellate procedure provide that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). As such, this objection is waived by Appellant's failure to preserve it in the lower court.

Lastly, Appellant claims that the jury's verdict was against the weight of the evidence. Our standard of review is well-established:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the

---

[5] Appellant argues that the trial court abused its discretion in allowing Appellees' counsel to ask Appellee Abdelkari and another witness, Mohamed Hashem, about Shawn's testimony at the arbitration hearing. However, Appellant did not object to this testimony at trial, this claim of error was waived. Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

- 15 -

lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling*, 80 A.3d 485, 490 (Pa.Super. 2013) [ (*en banc*)]. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

*Haan v. Wells*, 103 A.3d 60, 70 (Pa.Super. 2014) (some citations, quotations, and quotation marks omitted). However,

[i]f there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party.

*Corvin v. Tihansky*, 184 A.3d 986, 992-93 (Pa.Super. 2018) (quotation and quotation marks omitted).

*McFeeley v. Shah*, 226 A.3d 582, 594 (Pa.Super. 2020).

In reviewing the jury's decision to find in Appellees' favor in this negligence action, we are cognizant that "Pennsylvania law places the burden on the plaintiff to establish the existence of negligence on the part of the defendant by proving four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (2) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Estate of Swift v.*

*Northeastern Hosp. of Philadelphia*, 690 A.2d 719, 722 (Pa. Super. 1997). As noted above, while the jury indicated that Appellant had proven that Appellee Abdelkari was negligent, the jury found that Appellant had failed to prove that Appellee Abdelkari's actions were a factual cause of Appellant's damages. N.T., 11/16/17, at 52-53.

However, Appellant does not develop any argument as to how the trial court abused its discretion in denying his challenge to the weight of the evidence or how the jury's verdict was not supported by the weight of the evidence. Instead, Appellant simply reiterates that he was prejudiced by the trial court's evidentiary rulings that he challenged in the aforementioned claims that we have found to be meritless. As such, Appellant has not sufficiently developed a claim that is reviewable on appeal. "[I]t is a well settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal." *Sephakis v. Pennsylvania State Police Bureau of Records & Identification*, 214 A.3d 680, 687 (Pa.Super. 2019) (emphasizing that this Court "will not act as counsel and will not develop arguments on behalf of an appellant). Accordingly, we find this argument to be waived.

For the foregoing reasons, we affirm.

Judgment affirmed. Motion to quash denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/21/20</u>